# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF HAMPSHIRE, SEPTEMBER TERM, 1810, AT NORTHAMPTON.

———◆———

PRESENT:

Hon. THEOPHILUS PARSONS, Chief Justice
Hon. THEODORE SEDGWICK,
Hon. SAMUEL SEWALL,          } Justices.
Hon. ISAAC PARKER,

———◆———

## THE INHABITANTS OF GRANBY *versus* THE INHABITANTS OF AMHERST.

After the provincial act of 7 *G.* 3, *c.* 3, and before the statute of 1789, *c.* 14, no settlement could be gained, but by the approbation of the town at a general meeting.

A student of a college does not change his domicil by his occasional residence at the college.

The personal occupation of lands, required by the statute of 1789, includes an occupation by others under the direction and control of the owner.

But lands leased are not within the statute.

A seisin and occupation by a minor gave a settlement by that statute, although his lands were in the care of his guardians.

But by the statute of 1793, *c.* 34, a freeholder must be of full age to gain a settlement.

AssUMPSIT for money expended by the plaintiffs in the support and maintenance of one *Eli Emmons*, a pauper, whose settlement they allege to be in *Amherst*.

The question, whether the defendants are liable to refund the money so expended by the plaintiffs, was submitted to the deter mination of the Court upon a case stated by the parties.

The case states that *Robert Emmons*, and the pauper, his son, had their legal settlement in *Amherst*, on the first of May, 1780: the father then removed, with his son, a minor, [ * 2 ] *to *Granby*, where the father occupied lands, of which he was seised in fee, of the value of 500 dollars, and for which he paid taxes. In the autumn of 1784, *Robert*, with his said son, removed from *Granby* to *Belchertown*, upon lands, of which *Robert* was seised, of the value of 300 dollars, and which he occupied, and for which he paid taxes, his son *Eli* living with him until his death, March 14th, 1790. The lands descended to the pauper, his only son and heir, he being then a minor. From his father's death the pauper lived with his guardians, in *Belchertown*, until the latter part of August, 1795, except when he was absent at *Dartmouth* college, where he was four years, and until he received his degree. On the 14th of March, 1795, he came of age, and on the 28th of July, in the same year, he sold the said lands. For the period of two years and more from his father's death, the same lands were of the clear yearly value of 10 dollars and more, and during that time in the actual occupation and improvement of his guardians, for his sole use and benefit.

The parties agreed that at the time of *Robert's* removal from *Amherst* to *Granby*, he was lawfully settled in the former place, and that he so continued until his death, unless, by the facts agreed, he lost his settlement by gaining a new one in some other place; and that the said *Eli*, the pauper, was also so settled in said *Amherst*, at the time of his father's removal therefrom, and so continued until the commencement of this action, unless, from the facts agreed, he had gained some other settlement.

It was also agreed that if, upon these facts, the Court should be of opinion that the said *Eli* was lawfully settled in *Amherst*, judgment should be rendered for the plaintiffs for a sum agreed in damages with costs; otherwise the defendants were to recover their costs.

*Ashmun*, for the plaintiffs, relying on the settlement of the pauper in *Amherst*, as agreed in the case, considered the burden thrown on the defendants to prove a posterior settlement elsewhere.

[ * 3 ] *Dickenson*, for the defendants, argued that the pauper, being irremovable from his freehold in *Granby*, acquired a legal settlement in that place.

2

PARSONS, C. J. (after stating the facts.) Upon these facts we are to decide whether the pauper's settlement remained in *Amherst*, or whether he has gained a new settlement. If the pauper has gained a new settlement, it must be either in *Granby* or *Belchertown*.

Until the statute of 1789, *c.* 14, a new settlement could not be gained, after the statute of 7 *G.* 3, *c.* 3, but pursuant to the provisions of this last statute; by the fourth section of which it was enacted, that no person, after the tenth of April, 1767, coming to reside or dwell in any town, shall gain a settlement in any such town, unless he first obtain the approbation of the town at a general meeting; nor shall any town be at charge for the support of any person residing in such town, unless he shall have obtained such approbation.

From this provision it is manifest, that neither *Robert*, the father, nor his son, the pauper, gained any settlement in *Granby* by residence there; nor by the father's owning a freehold there. For although a man is not removable from his freehold, yet he gained no settlement by it; nor could he in any other way than by the approbation of the town. Irremovability and settlement have not the same effect. By the statute of 1793, *c.* 34, a man cannot gain a settlement in any other way than is there described. But a freehold of the clear yearly income of 10 dollars, in the town where he lives, will gain a settlement. He may have a freehold of less value; but he gains no settlement by it. (*Vide* 3 *Mass. Rep.* 436, *Inhabitants of Salem* vs. *Inhabitants of Andover.*) *Robert*, the father, therefore gained no settlement for himself, nor for his son, in *Granby*.

After he removed to *Belchertown*, if he acquired any settlement there, it was by force of the statute of 1789, *c.* 14: by the first section of this statute, it is, among other things, enacted that every person, being a citizen of the commonwealth,
\* who shall be seised of any estate of freehold, in any [ \* 4 ] town, of the clear annual income of 10 dollars, and shall reside thereon, or within the same town, occupying and improving the same in person, for the space of two whole years, shall have his settlement in the same town.

*Robert* was seised in *Belchertown*, when he removed to that place, of a freehold of a greater clear yearly value than 10 dollars, which he occupied and improved personally; but he died within two years after the passing of the statute. He therefore gained no settlement in *Belchertown*; and the last inquiry is, whether the pauper, after his father's death, gained a settlement in that town.

3

The statute of 1789 passed on the 23d of June in that year, and was repealed by the statute of 1793, c. 34, which passed February 11th, 1794, after an interval greater than two years. This last statute enacts, that all settlements then existing should remain, until new settlements should be acquired under that statute. And in the case of *Salem* vs. *Andover*, it was determined that a citizen, seised of a freehold of a clear yearly value of 10 dollars in his own occupation for two years, gained a settlement in the town where his freehold lay, he living in such town.

The pauper, in the case at bar, became seised of his freehold on the death of his father, March 14th, 1790, and continued so seised until his alienation, on the 28th of July, 1795. From his father's death to the 11th of February, 1794, when the statute of 1789 was repealed, is more than two years.

But the seisin of such a freehold for two years is not sufficient to gain a settlement. The owner must be a citizen of the commonwealth; he must reside within the town in which it is situate; and he must occupy and improve it personally.

There is no question of the citizenship of the pauper. But did he reside, during the two years, in *Belchertown?* From March 14th, 1790, to the latter part of August, 1791, he lived in [ * 5 ] *Belchertown.* He then became a student of * *Dartmouth* college, where he continued four years. And it is a question whether, during that period, he resided in *Belchertown.* He was abroad merely for his education; during the vacations, he was at his home in *Belchertown;* and on receiving his degree, he continued his residence in the same place. His absence was occasional, and for a particular purpose; and we are satisfied that within the intent of the statute, there was no change of his domicil. His home was at *Belchertown;* it was the place of his residence, although from home for the purpose of instruction. A seafaring man, having lands occupied by himself, or his servants or hired people, although frequently absent on long voyages, has always been considered as having his residence on his lands, and as not losing his domicil by following his profession. (4 *Mass. Rep.* 312, *Abington* vs. *Boston.*) We think, therefore, that the pauper's residence was in *Belchertown,* while he was a student at *Dartmouth* college. (*a*)

But he must have occupied and improved his lands *personally.* It is not to be supposed from this expression, that his lands must be cultivated by his own hands. If the labor be performed under his direction, by his factors or hired men, for his use; or if the lands be managed under the direction of any agen  or attorney

(*a*) *Story's Confl. Laws,* p. 52.

authorized to employ laborers, the owner may be considered as personally occupying them. Not so if the lands are demised, so that the lessee has the right of occupation against the lessor.

The pauper during these two years was a minor; and it has been objected that a seisin and occupation by a resident minor is not within the statute. The legislature has prescribed the terms by which a settlement may be gained. The statute does not expressly require the owner to be of full age. If he be seised of an estate of the value required, reside in the town where it is situate, and personally occupy it, the statute requires no more to give him a settlement. Now, a minor can do all this; and if disturbed in his seisin, or occupation, he may maintain trespass in his own name, *suing by his next friend. The legislature, perhaps [ * 6 ] conceiving an inconvenience in the gaining of a settlement by the seisin and occupation of a minor freeholder, has, by the statute of 1793, introduced a provision, requiring the freeholder to be of full age. But we must decide according to the former statute, and not defeat rights acquired under the repealing statute.

A minor can lease his lands, and transfer the occupation to his lessee. And if his guardians occupy, or direct the occupation for the use of the minor, the lands may still be considered as in his personal occupation; the guardians appointed by our laws being agents of their ward, having an authority not coupled with an interest. But where the guardians demise the lands, which they are authorized to do, and which in the case before us it is agreed they did do, the occupation is in the lessee, and not personally in the ward.

Upon the whole, it appears to us that *Eli Emmons*, the pauper, not having acquired a settlement, either in *Granby* or *Belchertown*, his original settlement in *Amherst* remained, and that the plaintiffs are therefore entitled to judgment.