Parker, C. J.
The only qualification to entitle the plaintiff to vote in Dedham when his vote was rejected by the defendants, which is disputed, is his residence in that town for one year next preceding the election. He had before lived at Roxlury, within the same congressional district; and the question is, whether he had been domiciled in Dedham one year immediately preceding the election. He had unquestionably a right to vote, provided he had been so domiciled.
On the 28th of October, in the preceding year, he received an *391 appointment, which rendered it convenient, if not necessary, for him to dwell in Dedham; and he then began to prepare for his removal. From that time until the 12th of November, he passed almost every day to Dedham, where he transacted his business, and returned to his family each night except three, on which he slept at Dedham rather by accident than design. He had also, on the 29th of October, engaged a house in Dedham; but he was not to occupy it until the 12th of November, on which day he removed his family, and became domiciled in Dedham.
We are of opinion that, under these circumstances, he remained an inhabitant of Roxbury until the day of his removal with his family: and there can be no doubt that he * might legally have exercised any of his municipal [ * 433 ] privileges there up to that time. It follows that he did not begin to be an inhabitant of Dedham until after the 2d" day of November, 1811; and as the election at. which he tendered his vote was on the 2d day of November, 1812, he was not then entitled to vote, in consequence of having been an inhabitant of that town for one year next preceding the election.
But another ground was assumed by his counsel, and very ingeniously maintained in argument, upon which it was expected to support this action, viz., that, being a resident within the congressional district for which the election was holden, and being other wise duly qualified, he had a right to vote in any town within that district. And the Court were, for some time, strongly inclined to this opinion. But a due consideration of the constitution and the laws relative to this subject, and the consequences of establishing a right to vote in any other town than that of which the voter is an inhabitant, has induced us to change our opinion.
It is true, as suggested by the counsel, that some of the reasons lor confining the electors of representatives in our General Court to towns do not exist in the case of electors for a member of Congress. But the qualifications of electors are settled by the constitutions of the United States and of this commonwealth ; and there is no power, while those constitutions remain, to add to or diminish from those qualifications.
By the constitution of the United States, the electors of a representative in Congress are to have the qualifications requisite for electors of the most numerous branch of the state legislature ; and by the constitution of this state, one of the qualifications for an elector of a representative is a residence in the town where he gives his vote for the space of one year next preceding an election. We do not suppose that an uninterrupted residence is required of a person who has his home in any particular town for occasional *392 absences, for pleasure, health, or business, may happen to many inhabitants of a town in the course of a year; and [ * 434 ] * it was not intended that such absences should deprive them of their right to vote, (a) But it is necessary that, for the space of a year, the voter should have had his home in the town where he claims to exercise this privilege; and a person removing from one town to another does not acquire a right to participate in the choice of a representative of his adopted town, until he has made it his home for the space of a year before his election.
Whether a citizen, removing into a neighboring town with his family, with an evident intention to change his residence, retains the right of voting in the town he has left, until he has acquired it in the town to which he has removed, is a question not now before "us. If he does not, volenti non Jit injuria; and if the election is deemed by him of sufficient importance, he can always choose his time for removal so as not to lose his right.
It has been argued that our legislature have given a different construction of this constitutional provision, by extending the powers and duties of selectmen of towns, with respect to these elections, to the assessors of unincorporated plantations, which have not a right, by the constitution of the state, to elect representatives in the state legislature; and this, it is said, is practically admitting that every qualification to vote for a state representative is not necessary to entitle one to vote for a member of Congress. It is true that, in this respect, persons may be considered as allowed by the legislature to vote for members of Congress who are not permitted to vote for state représentatives. We apprehend, however, that there is no provision in any statute, authorizing persons to vote in any other than their own town or plantation. The inhabitants of plantations, too, may be considered as qualified to choose representatives, if they, together with the other qualifications, have that of residence. It is because the community to which they belong has not arrived at the enjoyment of corporate powers in this particular that a representative cannot be sent, not because the inhabitants are not personally qualified. [ * 435 ] * But supposing that the legislature has the right to make a distinction between the personal and local qualifications of an elector, and to determine that the constitution of the United States requires only that the personal qualifications of *393 -he electors shall be the same with those of the electors of the popular branch of the state government; still some act of the legislature is requisite, to authorize the selectmen. of any town to receive the votes of any person not an inhabitant.
By standing laws, towns are required to have correct lists of the qualified voters belonging to the town, and the selectmen are bound to govern themselves by those lists. How could they proceed at an election, if they were bound to examine the qualifications and receive the votes of multitudes, who might present themselves at the polls from distant towns in the same district ?
Perhaps the legislature might provide, by law, that all the votes for the district of Norfolk should be given in to the selectmen of Dedham, or of any other town in the district. But this would be so manifestly inconvenient, both to the selectmen and the electors, that we cannot suppose the provision existing, unless we find a clear and positive statute to that effect.
Upon full consideration of this subject, we do not think, if we had the power of changing the constitution, we should attempt it in this instance. If electors were not limited, in the exercise of their privilege, to some particular space, great abuses might be practised by going from town to town, and multiplying the vote of an individual in districts where the towns are contiguous, and where they hold their meetings at different hours of the day. Besides, as there are qualifications of property which are with difficulty ascertained, we believe that the residence of a voter within a corporation for a year will enable the officers who regulate the elections to judge more correctly than if they were obliged to receive the votes of strangers, who may have lived but a few days within their observation.
* Upon the whole, we are satisfied that the defend- [ * 436 ] ants have done no wrong to the plaintiff in the instance complained of; and according to the agreement of the parties, the plaintiff must be called, (a)

Plaintiff nonsuit,

 Commonwealth vs. Walker, 4 Mass. Rep. 556.—Abington vs. Boston, 4 Mass. Rep. 312.— Granby vs. Amherst, 7 Mass. Rep. 1.— Cutts & Al. vs. Haskins, 9 Mass. Rep. 543. — Lincoln vs. Hapgood & Al. post, 350. — Sachet’s case, 1 Mass. Rep. 58. — Harvard College vs. Gore, 5 Pick. 370.

 See Cambridge vs. Charlestown, 13 Mass. Rep. 501. — U. States vs. The Penelope, 2 P. Adm. Decis. 438.