## THE TOWN OF GILFORD

*versus*

## THE TOWN OF GILMANTON.

Where the parents of a single woman live in one town, and she, when of age, labors for wages in another, her "dwelling place or home," under our statute as to the settlement of paupers, is in the town where she labored.

THIS was an action of assumpsit, for money expended in the relief of one Betsey Smith, from July, 1813, to October, 1814.

It was submitted on a statement, all the material facts in which were as follows: In A. D. 1789, Oliver Smith, the pauper's father, moved into Gilmanton. At that time she was about five years old; and thenceforward, until A. D. 1805, except an absence of three years, Oliver Smith and his family resided, without being warned out, in that part of the town which still retains the name of Gilmanton.

He then removed to that part of the town which is now called Gilford, but left the pauper behind him; and afterwards, till his death in 1811, he'd no office and paid no taxes. From 1805 to 1812, Betsey Smith labored as a hired servant in numerous families in what is still called Gilmanton, and was accustomed to treat the place where she worked as her home for the time of her service: but occasionally visited her parents, carried some of her earnings, in flax, wool, &c. to their house, and when out of employ manufactured a portion of them into clothes and bedding for her own use.

In June, 1812, Gilmanton was divided, and the north part of it incorporated into a town by the name of Gilford. At that time said Betsey was laboring with one Nelson, in what is still Gilmanton.

Upon these facts it was agreed that judgment should be entered for the plaintiff, or defendant, as the court might decide that the pauper was settled in Gilford or Gilmanton, when the relief sued for was furnished.

*L. B. Walker*, counsel for the plaintiffs.

*S. Moody*, for the defendants.

Woodbury, J. delivered the opinion of the court.

The father of Betsey Smith, by a residence of more than "one year" in Gilmanton before January 1st, 1796, acquired a settlement in that town. The pauper being one of his "legitimate children," must have the settlement of her father until she gains a "settlement" of "her own." To determine whether she hath or hath not gained a settlement of her own, it is necessary to consider the effect of her father's removal in 1805 to what is now Gilford. For though his decease, previous to June, 1812, prevented his own settlement from being changed by the act of incorporation, yet the settlement of his children would become altered to Gilford, provided they "dwelt or had their home" within its boundaries at the time said act passed(1.) So, if any of the children were absent in June, 1812, their settlement would be altered to Gilford, provided their "former dwelling place or home" had been within its limits. Because the 7th section of our statute declares, that "upon division of towns "or districts, every person having a settlement in either of "them, but being removed therefrom at the time of such "division, and not having gained a settlement elsewhere, shall "have his settlement in that town or district wherein his for- "mer dwelling place or home shall be upon such division."

Whether this section apply to persons who are removed from the "towns" which are divided, or to such as are removed from their home or place of settlement in particular "towns," but not from the "towns" themselves, it is not necessary to determine. Because, if it apply to the latter class only, then the meaning of the phrase, "dwelling place or home," as used in the statute, must be ascertained; and

(1) 10 Mass. R. 342.

if to the former class only, then the meaning of a similar phrase in the charter of incorporation of Gilford must be ascertained.

But the "home" of Betsey Smith could not be in what is now Gilford, till after 1805; because, previous to that time, both she and her parents resided in what is still Gilmanton. Her parents then removed, and we now proceed to consider the effect of that removal upon her settlement. She had ceased to constitute a permanent part of their family; was twenty-one years of age; was emancipated; and, during the seven succeeding years pursued in Gilmanton her occupation of a hired servant; made her own contracts, disposed of her own earnings, and never lived a day in Gilford, except as an occasional visitor, or when out of employ.

It is difficult to define with precision the meaning of "dwelling place or home." Much depends upon the pursuits and character of the person in relation to whom those terms are used. A youth, absent at college, may still retain a home in his native place, where he himself owns a freehold estate. 7 *Mass. Rep.* 1(1.) One absent at sea may still retain a home at his former residence. 4 *Mass. Rep.* 312, *Abington* vs. *Boston.*

(1) Granby vs. Amherst, Str. 251.

Indeed, all minors not emancipated, all *femes covert*, all servants and slaves, though occasionally absent for particular purposes, would seem still to possess the "homes" of their parents, husbands and masters.

But the pauper having left her father's house for permanent purposes,(2) having ceased to be a minor, and having her actual "dwelling place" in Gilmanton, must be considered at home there as fully as a person could be, who, without a family or a freehold, pursued the employment of a domestic servant. The "dwelling place" of such servants must, for the term of their service, be deemed "their home,"(3) for "*ex vi termini*," says *Ld. Coke,* 2 *Inst.* 702, 703, "every "person that dwelleth in any shire, town corporate," &c., "though he hath but a personal residence, yet is he said in "law to be an inhabitant or dweller there, as servants," &c.

(2) 2 Peters' Ad. 450, U.S. vs. The Penelope.

(3) Stat. 60, 594; Burns' Jus. 325.

After 1805, too, her residence in Gilmanton was such as would have made her, if of the other sex, "a citizen:" and that is not an unsafe rule as to inhabitancy, according to *Shipen, J. in Barrett's Case,* and in *Taylor* vs. *Knox*, 1 *Dall.* 153–4, 158.

Such persons would "reside" in the place, so as to be subject to military duty. They would be inhabitants of a town, so as to be subject to taxation. They would, also, as "inhabitants," have a right to "vote in that town or parish," as the place "where they dwelt and had their homes." *Wheeler* vs. *Patterson, Hi. Ap.* 1817.—11 *Mass. R.* 350, *Lincoln* vs. *Hapgood & al.*—*Stat.* 258, 291.

But should the pauper be considered as having a "dwelling place or home" in both Gilford and Gilmanton, for says lord Kenyon, in *The King* vs. *Sargent*,(1) "it happens perpetually that persons have different places of abode, in some of which they reside more or less, as suits their convenience;" (2) then, as in June, A. D. 1812, she actually dwelt in Gilmanton, it is more proper that her settlement should continue there. 3 *Burns' Just.* 360, *Tit., Poor., Sett. by Serv., Stat.* 524. On the other hand, if persons hired to service like the pauper, cannot with technical precision be said to have any "home," they must fall under the same rule with vagrants: and, on the division of the town in which they once had a settlement, be chargeable to that part of it which retains the name of the original corporation(3.)

(1) 5 D. & E. 468.

(2) 2 Inst. 703.

(3) 10 Mass. R. 342, Westport vs. Dartmouth.

But in that event, too, the facts of this case would make Gilmanton liable for the pauper's support.

It is always to be remembered, in this class of actions, that a settlement once acquired is not lost till another is clearly obtained. Consequently, whatever doubts we may entertain as to the domicil of the pauper, they unite, with the circumstances before mentioned, to satisfy us that Betsy Smith must be considered chargeable to Gilmanton, where both parties admit she once possessed a legal settlement.

Let judgment be entered for the plaintiff, pursuant to the agreement.