THE INHABITANTS OF LUBEC *vs.* THE INHABITANTS OF EAST-
PORT.

A minor, emancipated from his parents, is capable of acquiring a settlement under
    *Stat.* 1821, *ch.* 122.

An ideot, or person *non compos*, is capable of gaining a settlement by any mode
in that statute, not requiring any act of volition of his own.

THIS case, which was *assumpsit* for the support of a pauper,
was brought up by exceptions alleged by the defendants to the
opinion of *Perham* J. before whom it was tried in the Court below.
It was submitted without argument ; and the facts are stated in
the opinion of the Court, as delivered by

MELLEN C. J. By the exceptions, as amended by consent of
parties, it appears that *Oliver Shead*, the pauper's father, had his
legal settlement in *Eastport*, and there died in 1813 ;—that his
widow died in 1814 ;—that the family was then broken up and
scattered ;—that the pauper, who is now about seventeen years
old, is an ideot ;—that soon after his mother's death, he was re-
moved to *Lubec*, where he has remained ever since, supported,
at board, at the expense of his uncle. On these facts the question
is whether he has lost his derivative settlement in *Eastport*, and
gained one in his own right in *Lubec*, by reason of his residence in
that town on the 25th of *March* 1821, and in virtue of the second
section of the act of 1821, *ch.* 122. The provision in the section
alluded to, is in these words; " Any person resident in any town at
" the date of the passage of this act, who has not within one year
" previous to that date received supplies from some town as a
" pauper, shall be deemed to have a settlement in the town where
" he then dwells and has his home. From the facts before us,
it seems clear that when the pauper was removed to *Lubec*, he
was destitute of a home in *Eastport*, and in a state of poverty and
dependence. He was therefore, in this respect, capable of
having a home in *Lubec* ; and, unless his ideocy and his infancy,
or either of them, rendered him incapable of gaining a settle-
ment in *Lubec*, we have no hesitation in saying that his residence
in that town, in the circumstances before mentioned, on the 25th

of *March* 1821,—the day the act was passed,—gained him a settlement there. The next inquiry is whether the circumstance of his being an ideot prevented his gaining such settlement. The words of the statute are, " any person," &c. The words of the statute of *Massachusetts* of 1793 are, " all persons dwelling and " having their homes in any unincorporated place at the time " when the same shall be incorporated into a town or district " shall thereby gain a legal settlement therein." And in the case of *Fairfax v. Vassalborough*, it was decided by the Supreme Judicial Court of *Massachusetts*, that the statute applied to a resident *non compos*, who had no parents, and who thus gained a settlement in *Fairfax*. See 1 *Greenl.* 96, *note*. As the act of 1821, operated upon thousands, to fix their settlement in the towns in which they respectively dwelt and had their home on the day of its passage, without any volition on their part, and even without their knowledge ; the want of understanding and power of volition in the pauper would not seem to furnish any objection to his capacity to gain a settlement in *Lubec*, by his dwelling and having his home there when the act was passed.

It is true that in the case of *Upton v. Northbridge* 15 *Mass.* 237, the Court decided that a *non compos* who continued to reside in his father's family, after he was twenty one years of age, and was maintained by him, and removed with his father from *Northbridge* to *Upton*, (where *he* gained a settlement,) still remained one of his family so as to continue to derive his settlement under him; but the Court also in the same case say distinctly that they do not mean to decide, that a person so circumstanced cannot *by virtue of his estate* acquire a settlement. We cannot but believe that the operation of *an act of the Legislature* may fix the settlement of an *ideot* in a particular town as effectually as *his ownership of estate*, of which he would probably be ignorant. On the whole, we are of opinion that the pauper's ideocy was no bar, under the circumstances of the case, to his gaining a settlement in Lubec.

The remaining question is whether the *minority* of the pauper at the time the act took effect—he being then about fourteen years of age,—rendered him incapable of gaining a settlement in *Lubec*. It is very clear that a wife and minor children, which compose a part of the husband's and father's family, cannot gain

a settlement distinct from *his*. It would lead to a separation of husband and wife, and parents and children. Policy forbids this. *Shirley v. Watertown* 3 *Mass.* 322. *Hallowell v. Gardiner* 1 *Greenl.* 93. But if a minor child is *emancipated*, he may gain a settlement himself, and distinct from his parents. In *Somerset v. Dighton* 12 *Mass.* 383, the question was whether the pauper, being eleven years old, who had removed from *Dighton* into that part of *Swansey*, which afterwards was incorporated into a town by the name of *Somerset*, had gained a settlement there by not being warned out of town. It was contended that she had been *emancipated* from her mother—the child being illegitimate. But the emancipation was not satisfactorily proved; and for that reason the Court decided that such a residence in *Swansey*, did not gain her a settlement there, but she was considered as belonging to her *mother's* family. So in the case of *Granby v. Amherst* 7 *Mass.* 1, it was decided that minors, *forisfamiliated*, might, under the statute of 1789, by occupancy of an estate belonging to them, acquire a settlement.

In the case before us, the father and mother have been dead many years. The pauper was thrown upon the world,—destitute and without a home;—*emancipated by misfortune* from the care and protection of his parents. Under these circumstances we are of opinion he was as capable of gaining a settlement during his minority, as if his father had been living, and he had been, by his express consent, emancipated, and had left his home and commenced business for himself.

For these reasons we think the opinion and instructions of the Court of Common Pleas were incorrect. The exceptions are sustained, and a new trial must be had at the bar of this Court.