INHABITANTS OF HOPKINTON *vs.* INHABITANTS OF UPTON.

A person under guardianship as a spendthrift gained a settlement under *St.* 1821, *c.* 94, § 2, by living three years successively on an estate of inheritance or freehold purchased with his money and conveyed by deed to him, though it was purchased by his guardian without the sanction of the supreme court of probate.

ASSUMPSIT to recover the amount of expenses incurred in 1839 and 1840, for the support of Edward Seaver, a pauper. The question, whether the pauper's settlement was in Upton,

was submitted to the court on the following facts : Before Feb-
ruary 5th 1828, the pauper resided in Westborough, not having
a settlement in Upton.   On that day he was put under guardian-
ship as a spendthrift, by the judge of probate for the county of
Worcester, on the complaint of the selectmen of Westborough.
" The reason for having a guardian appointed was, that said
Seaver, who was idle and intemperate, had become, or was about
to become, entitled to a pension under the laws of the United
States, as a revolutionary soldier."   Silas Wesson, one of said
selectmen, was appointed the guardian.

On the 17th of May 1830, said guardian purchased, with the
money of said Seaver, a small house and an acre of land, in
Upton, and paid $ 1250 therefor.   The deed was taken by
said guardian in the name of said Seaver as grantee, and it was
recorded on the 27th of March 1833.   Seaver and his wife
lived upon and occupied said land from the time when it was
purchased, as aforesaid, until after the 4th of March 1834.
On that day, said guardian was discharged from his trust, and no
person has been appointed in his stead.

Said Seaver, on the 9th of January 1835, conveyed said
house and land in satisfaction of his debts, and has owned no
property since.

It was agreed by the parties, that if Seaver had gained a set-
tlement in Upton, the defendants should be defaulted, and judg-
ment be rendered against them for a certain sum and costs.

*Walcott*, for the plaintiffs.

*E. Washburn & E. R. Hoar*, for the defendants.

WILDE, J.   The general question submitted by the agree-
nent of the parties is, whether one Edward Seaver, a pauper,
for whose support this action is brought, had, at the time the
expenses were incurred by the plaintiffs for his support, acquired
a legal settlement in the defendant town.   It is admitted that
according to *St.* 1821, *c.* 94, § 2, he gained such a settlement,
by living three years on an estate in that town, in which he had
a freehold interest, or title in fee, provided the court should be
of opinion, on the facts agreed, that the said pauper was not
under such a legal disability, as to prevent him from coming
within the said provision of that statute.

The objection is, that he was, during the time of his living on the said estate, under guardianship as a spendthrift ; and it is contended that he could not gain a settlement by occupying his estate while laboring under this disability. It is also objected that the estate, which was purchased by his guardian, and was conveyed to his ward, did not vest in him, because the guardian had no authority to change or alter the property of his ward.

As to the first objection, we are of opinion that a person under guardianship as a spendthrift may gain a settlement, by living on his estate for the time required by the statute. In *Granby* v. *Amherst*, 7 Mass. 1, it was decided that a minor under guardianship might acquire a settlement by the occupation of his lands for the space of two years, according to *St.* 1789, *c.* 14, § 1 ; and that if the guardian occupied, or directed the occupation, for the use of the minor, the lands might still be considered as in his personal occupation. In *Orleans* v. *Chatham*, 2 Pick. 29, it was held that an estate of freehold or inheritance in trust was such an estate, that the *cestui que trust* might gain a settlement, by occupying it, under and according to the 4th mode in the *St.* of 1793, *c.* 34, § 2, although the legal estate was in the trustee. " The pauper," it is there said, " had a right to the rents and profits, and it is within the intention of the statute that the town, enjoying the taxes on the land for a certain length of time, should bear the burden of supporting the owner, if she afterwards needed their assistance." In *Upton* v. *Northbridge*, 15 Mass. 239, it is very clearly intimated, though not decided, that a *non compos* might acquire a settlement by occupying his estate ; and there is little doubt that such would have been the decision, if the case had required an opinion of the court on that question. Such a decision would seem to be in accordance with the reasoning of the court in the other cases referred to. But there is no similarity between the case of a *non compos* or insane person, and that of a spendthrift. The exclusive object of the statute, in authorizing the appointment of a guardian to the latter, is to prevent him from wasting his estate, and thereby exposing himself or his family to want, or the town, to which he may belong, to a charge for his or their

support and maintenance ; and he is not to be deprived of any of his rights and privileges, excepting such only as may be necessary to effectuate the object of the statute, among which certainly is not included the right of acquiring a legal settlement.

In support of the other objection, several cases-were cited by the defendants' counsel at the argument, by which it appears .that it is an established rule in England not to allow the guardians of lunatics to vary or change their property so as to affect the succession to it. *Prodgers* v. *Phrazier*, 1 Vern. 9. *Awdley* v. *Awdley*, 2 Vern. 192. But the rule has no application to the present case ; for there it is expressly provided by statute that the king shall provide that the property of lunatics shall be safely kept, and that they and their household shall be maintained with the profits thereof, and the residue kept to their use and be delivered to them when they shall come to their right minds ; so that in no wise is the property to be aliened, so as to affect the reversion to it. 1 Collinson on Lunacy, 91. Bac. Ab. Idiots & Lunatics, C.

But we have no doubt that the guardian of a spendthrift has the power to dispose of the personal property of his ward, and to invest the proceeds in real estate, whereby the title will vest in the ward. Whether the ward may not, after his guardian has been discharged from his trust, avoid his proceedings, unless allowed by the supreme court of probate, as is provided by *St.* 1820, *c.* 54, § 3, is a question not raised in the present case.

We are therefore of opinion that neither objection to the plaintiffs' right of action can be maintained, and judgment is to be rendered in their favor on default, according to the agreement of the parties.

*Defendants defaulted.*