GEORGETOWN.

B., a minister of the gospel, having closed an engagement as such in E., where his family continued to reside, went to G. in September, 1849, and, after preaching to a society there a short time, made an engagement with a committee of the society, to continue his services until the first day of March then next, at which time the committee's authority expired. This engagement was made after an unanimous expression of a desire, at a voluntary and informal meeting of the society, that B. should be engaged, with a probable view to his settlement for a year from the first of March, as had been the custom of the society. The society thereupon gave up a candidate whom they had previously employed and intended to settle; and B. gave up a partial engagement which he had made to preach with another society. B. was informed by the committee, that the society were well pleased with him, and that his stay with them would probably be permanent, and he expressed his intention to remain. B. preached at G. on the 21st of November, and on three other Sundays in the same month, boarding at the hotel in G. while his family remained in E. During this time, B. was looking for a house in G., but had some difficulty in finding one. B. continued to preach in G., to which he removed his family in December, 1849, and was residing there at the time of the general election in November, 1850, when he was elected and returned a member from the town of G. It was held, upon the foregoing which were the principal facts in the case, that the inhabitancy of B. in G., for a year previous to his election, was not thereby disproved.

THE election of Henry H. Baker, returned a member from the town of Georgetown, was controverted by Jeremiah Russell and others, legal voters of that town, on several grounds, (the first of which only was insisted upon,) which appear in the following report of the committee on elections: —

"The objections set forth in the petition against the sitting member, are: —

1st. That the said Baker had not, at the time of his election

[1] 73 J. H. 554.

as a representative, been an inhabitant of said town of Georgetown for one year previous to the time of his said election.

2d. That the check list was not used at said election, agreeably to the provisions of the law in such cases provided.

3d. That a large number of illegal votes were deposited in the ballot-box, at said election for representative as aforesaid.

The principal facts in the case are these. Mr. Baker is a clergyman, and formerly preached at Essex, where he was residing with his family, in September, 1849. His engagement at Essex expired the spring previous, and he had no occupation or relations there, and was a candidate for any vacant pulpit. He preached in Georgetown by invitation, in September, as a candidate, the society being in the habit of settling ministers by the year, and the year commencing March 1st. A committee was chosen who had power to employ clergymen during the year for which they were chosen. This committee wrote to Mr. Baker, informing him that his preaching had been acceptable, that the society were desirous of hearing him again, and that they would probably settle him for a year, if they should like him as well as they had done before. In compliance with this invitation, Mr. Baker preached in Georgetown, October 21st; and, after the services, a voluntary meeting of the members of the society was held, at the request of the committee, and a unanimous desire was expressed, that Mr. Baker might be engaged. There was some conflict of evidence, as to whether it was voted at this meeting, that Mr. Baker should be engaged for three months, or only for four weeks; but it was shown that this meeting voted to give up Mr. Robinson, who had been a candidate, and whom they had intended to settle as a preacher. It was also proved, that Mr. Baker was, on the next day, October 22d, engaged by the committee, whose right so to engage him was admitted, to preach for four Sundays and for three months, to end March 1st, when the committee's term expired. This offer Mr. Baker accepted, and gave up a partial engagement which he had at another place. Mr. Baker was also informed, by the committee, that the society were well pleased with him, and that his

stay with them would probably be permanent; and he expressed his intention to remain.

Mr. Baker preached in Georgetown, November 4th, and three other Sundays in the same month, boarding at the hotel, dividing his time between Georgetown and Essex, where his family continued to reside. During this time, he was looking for a house in Georgetown, but met with some difficulty in finding one. Another informal meeting was held in November, and one December 2d. The first record of a vote to employ Mr. Baker is found to be dated December 2d. But it appeared, by the testimony of several persons, that neither this nor any other of the meetings was a legal one, formally called, but that all were voluntary meetings, held in compliance with a request made on the day of the meeting, in order to get the views of members. It also appeared, that at the three meetings held in November and December, several other votes were passed, no one of which was recorded. The clerk, as well as several others, also testified, that in his opinion, a similar vote to that of December 2d was passed at the October meeting.

A short time before thanksgiving day, Mr. Baker's family went eastward on a visit, and did not return to Essex, but went to Georgetown in the early part of December. On the 9th of December, Mr. Baker's furniture was removed to Georgetown, while his family was absent. Mr. Baker was not in Essex, except at the time of removing his furniture.

A check list was produced, bearing a cipher, made with a pencil, nearly opposite the name of Mr. Baker, and it was testified that such marks were used to designate those who voted at the November election of 1849. It was also shown, that this list had been used for two or three years, and at repeated elections, both before and since November, 1849; that similar marks had been used at different elections, and that the selectmen, since November, 1849, had attempted to erase the marks on the list with India rubber. It was further testified, that the check list was kept in an exposed situation, where it could be examined by any person, and that, before this hearing, it was

brought from its place of deposit by a person who was not produced as a witness.

A witness living in Georgetown also testified, that he overheard a conversation, on the Sabbath previous to the November election, 1849, when Mr. Baker stated, that he was going to Essex, to vote against one Mr. Prince, on the next day. But a witness, living in Essex, testified, that Mr. Baker declined voting at the election in November, 1849, at Essex, because of his removal to Georgetown. This witness was a vote distributor for Mr. Prince, and, through the afternoon when the Essex election took place, stood near Mr. Baker, who was distributing votes against him; and they debated the matter until near the closing of the poll, when they were urged to come and vote. Mr. Baker declined, giving the reason above stated. The witness voted, returned at once, found Mr. Baker on the outside of the building, and had a further conversation with him.

One witness testified, that Mr. Baker admitted to him, that he told one Edwards that he had voted for Mr. Cass in 1848, and that afterwards, having heard Mr. Phillips lecture, he had voted for him in 1849. Mr. Edwards, however, testified that he had had no such conversation with Mr. Baker, but that Mr. Baker had told him that he voted for Phillips in 1848. The statement of the first witness was explained by the fact, that the governor's election in 1848 was on a day subsequent to the presidential election, and that the witness, hearing Mr. Baker say that he voted for Mr. Cass in 1848, and afterwards for Mr. Phillips, and forgetting the time of the governor's election, supposed that he spoke of the election of 1849. This witness afterwards admitted, that he might have made this mistake, and that his evidence might have been wrong. Some other evidence was also produced, to show that Mr. Baker did vote for Mr. Phillips in 1848.

The only question to be settled in this case is,—had Mr. Baker been an 'inhabitant' of the town of Georgetown for one year previous to his election? if he had been, then he should retain his seat; if otherwise, he should not.

In deciding the question of Mr. Baker's right to retain his seat, certain principles of law will be found to be applicable:

1st. The burden of proof is on the petitioners.

2d. The word 'inhabitant' in the constitution is equivalent to the idea conveyed by the word domicil. See *Opinion of the S. J. Court*, 5 Met. 588; *ante*, 510.

3d. Every man must have a domicil somewhere. *Abington* v. *W. Bridgewater*, 23 Pick. 170; *Thorndike* v. *Boston*, 1 Met. 245; *Opinion of the S. J. Court*, 5 Met. 589; *ante*, 512.

4th. The declarations of a party as to his intent or expectation are good evidences thereof, and in a doubtful case, his mere election of a domicil may determine the question. *Kilburn* v. *Bennett*, 3 Met. 199; *Lyman* v. *Fiske*, 17 Pick. 231.

5th. The loss of a former domicil, and the acquisition of a new one, are simultaneous. See *Opinion of the S. J. Court*, 5 Met. 589; *ante*, 512.

6th. A man's domicil is that place where he is situated voluntarily, and with the intent to remain permanently.

Upon these principles, we think that the petitioners have failed to show, that Mr. Baker was not an inhabitant of Georgetown for one year previous to November 11th, 1850, but that it does appear that he was, at least as early as November 4th, 1849, situated in Georgetown with the intent to remain there permanently. At this time he had no occupation in Essex and no motive to remain there. He had an occupation in Georgetown; he preached there, and performed the duties of a pastor; and he was (October 22d) engaged to remain there until March 1st, 1850. He had also a well-grounded expectation, that he should continue there permanently, from the unanimity of the society, from the expressions of the committee, and from the vote to break off the partial engagement with Mr. Robinson, who was to have been settled over the society. The evidence of his intention is as clearly proved, as it can be in almost any case, if not in any case. He concluded an engagement with the committee, and gave up preaching as a candidate in another town. He did not move his family to Georgetown, partly because he had some difficulty in obtain-

ing a house, and partly because they were to visit Maine before they went to Georgetown. But their transient stay in Essex did not make Mr. Baker an 'inhabitant' in that town, any more than their transient visit to Maine transferred his domicil to that state. The mere fact, that a man's family resides in any given place, does not necessarily fix his domicil there; nor does the position of his furniture control his residence. *Fitchburg* v. *Winchendon*, 4 Cush. Rep. 190. A man is certainly entitled to a reasonable time to remove his family and furniture, after changing his own abode, and during this time, he ought not to be cut off from the privileges that result from having a domicil. It is to be noticed, that Mr. Baker was as fully engaged in October, and as fully determined to remain in Georgetown, as at any subsequent time; and when he hired his house, he had no other engagement than that of October 21st and 22d.

Another strong proof of Mr. Baker's intention, as to his residence, is found in his declining to vote in Essex in 1849; we think the testimony, introduced to show that he did vote there, altogether too loose and unsatisfactory to establish that point. And the evidence that he did not vote, and that he declined to do so, on the ground of his change of residence, is positive and decisive. It is clear, that under the circumstances, especially after this declaration, Mr. Baker could not have voted at Essex on November 11th, 1849; it then necessarily follows, that if he had lost his domicil in Essex, he had gained a domicil in Georgetown, for 'every man must have a domicil somewhere,' and 'when he loses the old one, he gains a new one.'

To illustrate our views, we think that if the same state of facts had existed on May 1st, that did exist on November 11th, Mr. Baker would clearly have been taxable in Georgetown, and not in Essex; if this be so, his domicil was in Georgetown, and he continued to reside there for a year before the election in 1850.

The committee are, therefore, of opinion, that Henry H. Baker, the sitting member from the town of Georgetown, is

entitled to his seat, and recommend that the petitioners have leave to withdraw their petition."

Two members of the committee, (Messrs. *Story* and *Schouler*,) dissenting from the conclusions of the report, presented their views of the case to the house, as follows :—

" The undersigned have not deemed it necessary to submit a detailed statement of the evidence in this case, as the material facts appear in their report, and in that submitted by the other members of the committee, who were present at the hearing of this case. But the undersigned desire to suggest, that they do not consider the statement of evidence, made by the other members of the committee, to be entirely accurate, and in some important respects they think it erroneous. The undersigned will, however, content themselves with referring to their minutes of the evidence, when the case shall be heard before the house.

The right of Mr. Baker to his seat was resisted principally on the ground, that he had not been an inhabitant of the town of Georgetown, for one year next preceding his election as representative, and was consequently ineligible to such office. The constitution, c. 1, art. 3, requires that a person, to be eligible to the house of representatives, shall, 'for one year next preceding his election, have been an inhabitant of the town he shall be chosen to represent.'

The question submitted is, whether Mr. Baker had been an inhabitant of Georgetown for one year next preceding his election, which was on November 11th, 1850. In the constitution, c. 1, sec. 2, art. 2, the word 'inhabitant' is thus defined :— ' Every person shall be considered as an inhabitant, for the purpose of electing and being elected into any office or place within this state, in that town, district, or plantation, where he dwelleth, or hath his home.' Did, then, Mr. Baker dwell or have his home in Georgetown, for one year next preceding his election? From and upon the evidence submitted to the committee, we think it was conclusively proved, that he did not dwell or have his home in that town, for one year next preceding the 11th of November, 1850.

It was proved, that for some years immediately preceding

his residence in Georgetown, he had resided in the town of Essex, with his wife and family ; that he preached in Georgetown on the last Sunday of September, 1849, and again on the third Sunday of October following. On this last-mentioned day, a vote was passed by the society, requesting their committee to employ him to preach for four Sundays, and to raise a subscription to pay him. From that time to December 2d, 1849, he preached at Georgetown every Sunday but one. On December 2d, the society passed a vote instructing their committee to employ him for three months. About a week after this, Mr. Baker removed his furniture from Essex to Georgetown, and his family soon after took up their residence in Georgetown. It appeared, that up to December 9th, he spent most of his time in Essex.

The check list of the town of Essex, for the year 1849, was produced by one of the selectmen of that town. Mr. Baker's name was on it, and was checked with the usual mark employed to designate those who voted at the annual meeting in November, 1849.[1] It was also proved by Dr. Cogswell, of Georgetown, that on the Sunday preceding the annual state election in November, 1849, Mr. Baker told him he wished to go to Essex that night, and gave as a reason, that he wanted to get back to town-meeting, to vote. He said a man by the name of Prince was a candidate for representative from Essex, whose election he wished to defeat. He did start to go to Essex that night.

Col. Kimball, of Georgetown, also testified, that Mr. Baker told him, the day after his election in November last, that he voted for Cass in 1848, and for Phillips in 1849. Mr. Baker produced a witness to rebut this, who stated that he was with Mr. Baker on the day of the election in November, 1849, outside of the room in which the citizens voted, and that he was with or near him most of the time the polls were opened, and did not see him vote; and further, that Mr. Baker said he

---

[1] It is stated in the report made by the other members of the committee, that the check mark used at the annual meeting in November, 1849, had been used at previous meetings, on the same check list. This evidence is entirely opposed to the recollection of and to the minutes of evidence taken by the undersigned.

should not vote there, (in Essex,) on account of his relations at Georgetown. The counsel, who appeared for the petitioners, offered to let Mr. Baker take the stand, and testify whether he voted in Essex, in 1849, which he declined doing.

Upon this evidence, we think it clear, that Mr. Baker was not an inhabitant of Georgetown, within the meaning and intent of the constitution, previous to December, 1849.

The ground relied upon by Mr. Baker was, that although his family was in Essex, in November, 1849, yet that it was his intention at that time to remove to Georgetown. We think that if he, previous to December, 1849, had any intention of thus changing his residence, it was not, and could not have been a settled intention. It was to depend upon future contingencies. This is clearly so, if he voted in Essex on the 12th of November, 1849, which was the day of the annual state election, and we think the evidence is very satisfactory, that he did so. There are no facts tending to show, that any such intention was executed until the middle of December. In order that Mr. Baker's intention should avail him in this case, we think the circumstances should be such as to render the fact of his residence at least doubtful. If, for instance, he had removed his family to Georgetown previous to November 11th, 1849, that fact would not be conclusive of his intention to make that town his permanent home, and evidence of intention would have been important to determine of what place he was an inhabitant. Or, if he had engaged permanent lodgings at Georgetown, whilst his family was elsewhere, a question might arise, whether he intended to live apart from his family, and gain a residence in a different town from the one in which they resided. In such cases, where the actual facts leave the place of residence doubtful, intentions may prevail to show of which place the individual was actually an inhabitant. And it seems to us, that intentions cannot be important under any other circumstances. A man who resides with his family in one town cannot gain a residence in another town, until he removes his family there, merely because he intends to remove.

In these views, we are confirmed by the various decisions which have been made by the supreme judicial court of this state. In the case of *Williams* v. *Whiting*, 11 Mass. Rep., 424, the question was, whether the plaintiff had been domiciled in the town of Dedham for one year next preceding November 2d, 1812, and was consequently entitled to vote in that town on that day. The court say, (p. 432): ' On the 28th of October, in the preceding year, he (the plaintiff) received an appointment which rendered it convenient, if not necessary, for him to dwell in Dedham; and he then began to prepare for his removal. From that time until the 12th of November, he passed almost every day to Dedham, where he transacted his business, and returned to his family every night except three, on which he slept at Dedham rather by accident than design. He had also, on the 29th of October, engaged a house in Dedham; but he was not to occupy it until the 12th of November; on which day he removed his family, and became domiciled in Dedham. ' We are of opinion, that, under these circumstances, he remained an inhabitant of Roxbury, until the day of his removal with his family; and there can be no doubt that he might legally have exercised any of his municipal privileges there, up to that time. It follows, that he did not begin to be an inhabitant of Dedham, until after the 2d of November, 1811; and as the election, at which he tendered his vote, was on the 2d of November, 1812, he was not then entitled to vote, in consequence of having been an inhabitant of that town for one year next preceding the election.'

In *Jennison* v. *Hapgood*, 10 Pick. Rep., 98, the court say:— ' To prove a change of domicil, it must be made to appear, not only that the old domicil has been abandoned, but also that a new one has been acquired; so that a domicil, being once fixed, will continue, notwithstanding the absence of the party, until the substitution of a new one. The intention to abandon, and actual residence at another place, if not accompanied with the intention of remaining there permanently, or at least for an indefinite time, will not produce a change of domicil.'

Since the hearing before the committee, Mr. Baker has refer-

red us to a decision of the supreme judicial court, not yet published, in the case of *Fitchburg* v. *Winchendon*, (4 Cush. 190,) and a copy has been obtained from the reporter. There is no intention expressed in that decision to overrule the former decisions of the court, and we think there is nothing in the language of the court, which can be construed into an intention to change the doctrines of former decisions. The only matter decided in that case is, that intentions, where there is an actual residence, are always competent evidence to show whether such residence is to be regarded as a permanent one. This is perfectly consistent with the other decisions.

In view of all the facts, as disclosed on the hearing in this case, under the decisions of our highest judicial tribunal, we think it has been satisfactorily shown, that Mr. Baker did not dwell, or have his home, in Georgetown, for the term of one year next preceding his election as a member of this house, in November, 1850, and we are therefore of opinion, that such election was void."

The report of the committee, that the petitioners have leave to withdraw their petition, was agreed to.[1]