JOHN HUMPHREY *vs.* JOSIAH KINGMAN & others.

Payment of a state or county tax, within two years next preceding the election of
governor, &c., by one who is in other respects a qualified voter, entitles him to vote
at such election, although such tax was illegally assessed upon him.

Though a tax, which is assessed upon one person, is paid for him by another, without
his previous authority, yet if he recognizes the act, and repays or promises to re-
pay the amount, on the ground that such person acted as his agent, he thereby ac-
quires the same right to vote as if he had paid the tax with his own hand.

Where A., who was taxed for land, denied, when called on for payment, that he was
rightfully taxed, and directed the collector to call on B., the owner of the land, and
the collector thereupon called on B.'s wife, in the absence of B., and she paid the
tax, and A. afterwards repaid her and took the receipt which the collector had
given her; it was *held,* that if A. directed the collector to call on B. because the
tax was wrongfully assessed on A., and if the wife of B. paid the tax, believing that
B. ought to pay it, and if A. afterwards, not believing himself to be rightfully as-
sessed, or that B. had any claim on him for the amount, repaid the amount merely
for the purpose of securing a right to vote, it was not such a payment as entitled
him to vote. *Held* also, that in an action by A. against selectmen for refusing his
vote, they might show that A. did not occupy the land for which he was taxed, as
that fact had a bearing on the question whether the wife of B., in paying the tax,
acted as A.'s agent, and whether she called on A. for repayment.

A voter, who is challenged at the polls, cannot maintain an action against selectmen
for refusing to receive his vote, if they do not act wilfully or maliciously, but under
a mistake into which they are led by his conduct which was likely to mislead them
into a belief that he had abandoned his claim to a right to vote.

Selectmen have authority, even after the opening of a town meeting, to strike from
the list of voters the name of a person who is not a legal voter.

TRESPASS upon the case against the selectmen of North
Bridgwater for refusing the plaintiff's vote at the annual elec-
tion of governor, &c. in November 1840. The trial was in the
court of common pleas, before *Warren,* J. ; and the principal
question was, whether the plaintiff had paid any state or county
tax assessed upon him within two years next preceding that
election.

It appeared that in 1837, 1838 and 1839, a county tax had
been assessed upon the plaintiff, in the town of Easton, because
of his supposed interest in a small lot of land in that town ; that
said land belonged to Benjamin G. Green, a brother in law of
the plaintiff; that the collector of taxes for said town called
upon the plaintiff, in March 1840, for payment of said taxes,
and that the plaintiff refused to pay them, (saying that it did not
belong to him to pay them, as he did not own the land,) and

Humphrey *v.* Kingman & others.

directed the collector to call on said Green ; that the collector called on said Green's wife, sister of the plaintiff—said Green being then absent at sea — and told her what the plaintiff had said ; that she thereupon paid the amount of said taxes, and that the collector gave a receipt therefor, as follows :

| | | | |
|---|---|---|---|
| . Mr. John Humphrey's tax in Easton | for 1837 | $ 0·36 | |
| " " | for 1838 | $ 0·42 | |
| " " | for 1839 | $ 0·30 | |
| | | | $ 1·08 |

Easton, March 26, 184 . Recd. Payment of ———

Tisdale Harlow — Collector of Easton.

It also appeared that said collector had previously called on the plaintiff for the tax of 1837, and that he had promised to pay it.

There was no evidence of any previous request made by the plaintiff to Green, or his wife, to pay the amount of these taxes for him ; but there was evidence tending to show, that after such payment and before the day of said election, Mrs. Green informed the plaintiff that she had paid said taxes, and that he repaid the amount to her.

It appeared that on the Saturday before the day of said election, the plaintiff presented the collector's receipt to the defendants, who thereupon adjourned the consideration of the subject until the day of election ; that after the polls were opened on that day, the plaintiff tendered his vote to the defendants, who presided at the meeting, and that they thereupon added his name to the list of voters ; that a citizen of the town challenged the plaintiff's right to vote, and the defendants then inquired of the plaintiff if he paid the taxes aforesaid ; that the plaintiff replied that he did pay them ; that he was asked if he would make oath to that fact, to which he replied that he would ; that the said Green then declared that he, (Green,) or his wife, had paid them ; that the plaintiff made no statement or explanation to the defendants of the circumstances attending said payment, but immediately withdrew, without further urging his rights ; and that the defendants then directed the town clerk to strike the plaintiff's name from the voting list.

The testimony of Green and his wife was intr···· sd      the

plaintiff, without objection by the defendants ; but they subse-quently introduced evidence of the declarations of the plaintiff, tending to show Green's pecuniary interest in the result of the suit. And the judge instructed the jury, that if they were satis-fied, from the evidence, that Green had a pecuniary interest in the result of the suit, they should exclude from their considera-tion his testimony and that of his wife.

The defendants offered to prove that the plaintiff did not oc-cupy or improve the land upon which the taxes were assessed, and the evidence was admitted, although the plaintiff objected thereto. But the judge instructed the jury that it was imma-terial whether the plaintiff was rightfully assessed, or not ; still that the evidence was proper for their consideration, as bearing upon the question whether Mrs. Green, in paying the taxes, act-ed as agent for the plaintiff, and whether she ever called upon him for repayment.

The jury were also instructed, that though the defendants had inserted the plaintiff's name on the voting list, they had a right, after the polls were opened, and after the plaintiff claimed a right to vote, to strike his name from the list, if he was not a qualified voter.

The other instructions to the jury are hereinafter set forth at large in the opinion of the court.

The jury returned a verdict for the defendants, and the plain-tiff alleged exceptions to the rulings and instructions of the judge.

*Hallett*, for the plaintiff.

*W. Baylies*, for the defendants.

HUBBARD, J. The two principal questions presented for consideration, under the instructions of the presiding judge in the court of common pleas, are, 1st. whether the tax, alleged to have been paid by the plaintiff, was paid under such circum-stances as to entitle him to vote at the election in November 1840 ; and 2d. if it was so paid by the plaintiff, whether his conduct at the meeting was such as to mislead the defendants, and to exonerate them from all liability to damages in this action.

The right of voting and the burden of taxation are so con
nected, that with a few specified exceptions, the one may be
said to be dependent on the other ; and to entitle a man to vote,
he must, as a prerequisite, have paid, within two years next
preceding the time of the election at which he claims a right to
vote, a state or county tax, by himself or his parent, master or
guardian ; by which last provision, minors who have been as-
sessed for a poll tax, or whose property has been assessed for a
state or county tax, and which tax has been paid, become
immediately qualified to vote on their arriving at full age.

In the case at bar, the judge instructed the jury, " that if the
taxes were paid by Mrs. Green *for the plaintiff*, with or with
out previous authority from him, and he recognized the act and
repaid, or promised to repay her the amount, on the ground that
she had acted as his agent, then the plaintiff stood precisely in
the same situation as if he had made the payment to the collec-
tor with his own hands ; " and we think the instruction was cor-
rect. The object of the provision is, to obtain the payment of
taxes ; and if payment is made in behalf of an individual, and he
recognizes the obligation or liability to pay, it is equivalent in
law to the payment by himself ; as the officers, who collect
the taxes, are not called upon to trace the sources from whence
the money comes, by which the taxes are paid. The judge also
further instructed the jury, if they believed, upon the evidence
offered to them, " that the plaintiff directed the collector to call
upon said Green for payment, because the tax was wrongfully
assessed upon the plaintiff, and if Mrs. Green paid the tax, sup-
posing that it belonged to her husband to pay it ; and if the
plaintiff afterwards, and before the election, not believing that
the tax was rightfully assessed upon him, or that Green had any
legal claim upon him for the amount, but merely for the purpose
of securing a right to vote, repaid the amount to Mrs. Green,
and she received it, for the purpose of conferring this right, it
was not such a payment of the tax as entitled him to vote."
And we are equally satisfied with the correctness of this instruc-
tion. For if the plaintiff did not own the land upon which the
tax was assessed, but it belonged to his brother in law, Green

and his wife, in his absence, paid the tax for her husband ; then the tax was not paid by the plaintiff, but by him to whom it rightfully belonged to pay it.   The tax itself was not paid twice, and the subsequent act of the plaintiff, in giving the same amount of money to Mrs. Green, and taking from her the collector's receipt of the payment of the tax, which on the face of the receipt was assessed to the plaintiff, was not a payment of a state or county tax either legally or illegally assessed upon him.   It was the taking advantage of the mistake of the assessors in a neighboring town, as to the ownership of non-resident property, and by means thereof to represent himself as rightfully entitled to vote, under the pretence of having paid a tax within two years.

It is not the mere payment of money, that qualifies a man to become a voter, but the money paid must be for the discharge of a tax actually assessed upon him, whether legally or illegally. This is not the case of one man's paying the tax of another to enable the other to vote ; for this was not the tax of the plaintiff — if the jury believed the evidence — for he had disavowed it, and through his communication the true owner had paid it ; and he cannot make himself a legal voter, by giving money to the person who paid the tax, and to whom it belonged to pay, for the sake of getting the collector's receipt and thus enabling himself to furnish to the selectmen apparent evidence of having paid the tax himself.  *Bridge* v. *Lincoln*, 14 Mass. 373.

The second important question arising in this case is, that the presiding judge further instructed the jury, " that if the plaintiff had a legal right to vote at the said election, and the defendants, not acting wilfully or maliciously, but through mistake, had rejected his vote, and if they were led into that mistake by the plaintiff, he was not entitled to a remedy against them ; that they should consider the evidence bearing upon this part of the case, and if they were satisfied that the plaintiff had, at the town meeting, pursued such a course of conduct as would be likely to mislead the defendants into the belief that he abandoned his claim to a right to vote, and if in fact the defendants were misled, their verdict should be for the defendants."

The principle involved in this instruction is one of impor-

tance, both as it regards the rights of voters and the protection which the law affords to officers in the discharge of their duty, who are made personally responsible for the manner in which they perform it. And the case of *Lincoln* v. *Hapgood*, 11 Mass. 350, is relied upon by the plaintiff in his argument, to show that the instruction was erroneous. But we think the case at bar is clearly distinguishable in principle from that. There no misrepresentation was made by the plaintiff, nor was there proof of any act or conduct of his, at the time of the election, which could mislead the selectmen, and thus expose them to error ; but it was a mistaken judgment upon a knowledge of all the facts fully laid before them. But in the case at bar, the plaintiff, after his right to vote was challenged, (the selectmen having previously added his name to the list of voters,) on being inquired of, if he had paid the said taxes, replied that he did pay them, and on being asked if he would make oath to that fact, replied that he would. Yet when Green declared that he or his wife had paid them, the plaintiff made no statement or explanation to the defendants of the circumstances attending said payment, but immediately withdrew, without further urging his rights. In consequence of this, the defendants directed the town clerk to strike his name from the voting list. Upon this evidence, the presiding judge charged as before mentioned. Here, the conduct of the plaintiff misled the selectmen into the belief that he had abandoned his claim to a right to vote, and consequently that he had not paid the tax. And we are of opinion that the instructions were correct ; because the error of judgment, if any, for which the defendants are now sought to be charged in damages, arose from the plaintiff's own conduct, and did not proceed from their mistaken view of his rights. And he shall not now be permitted to visit upon them the consequences of his own misjudgment. It is the sound application of the maxim that a man shall not take advantage of his own wrong ; that he shall not lie by, when the time is passing in which it is his duty to present his claims, and forbear to urge them, and afterwards attempt to enforce his rights, to the injury of others. When the selectmen were inquiring into the facts.

to enable them to make a correct decision, the plaintiff, instead of persevering in his claim and removing the objection raised, or showing that it was unfounded, abandoned his claim and so led them into error ; and he shall not now be permitted to set up that right, though it really existed, to the damage of these defendants, who were acting honestly in the discharge of their duty.

It was also objected, that the judge admitted testimony on the point whether the land, on which the tax was assessed, had been improved by the plaintiff or not.   But we think, for the purpose for which it was admitted, as having a bearing upon the question whether Mrs. Green, in paying the tax, acted as agent for her brother or not, and whether she ever did call on him to repay it, it was not improperly received.

It was also contended, that the selectmen had no right to strike the name of the party from the voting list, although they were satisfied that he was not a legal voter.   In regard to this objection, if the plaintiff was not a legal voter, it was the duty of the selectmen to strike his name from the list of voters ; and whether done at the meeting, or afterwards, was immaterial.   The gravamen of the action is, not that the plaintiff's name was stricken from the list of voters, but that his vote was refused.

On the examination of the case, we are satisfied there were no errors in the rulings and instructions of the presiding judge, to which our attention has been called, and therefore the exceptions are overruled.           *Judgment on the verdict*