## STATE *v.* SMITH & a.

Selectmen are not liable, upon an indictment, for refusing to insert the name of a voter upon the check-list, if they act honestly, and in the exercise of their best judgment.

INDICTMENT.  The defendants were selectmen of the town of Boscawen from March, 1844, to March, 1845, and this was an indictment charging them with erasing, from the list of voters in that town, the name of Timothy Kelley, alleged to have been a legal voter in that town.

Kelley had his residence in Boscawen, and at some time during the year, and before his name was erased from the list, he applied to the selectmen for aid in the support of his son, on the ground that he, Timothy Kelley, was unable to support his son without such aid.

The selectmen, being satisfied of Kelley's inability, proposed to take his son away, and support him like their other paupers; but Kelley represented that the state of his son's health and mind was such that it was necessary he should remain under his care.

The selectmen then agreed to pay Kelley a weekly allowance of seventy-five cents.  A few days before the annual meeting in 1845, Timothy Kelley applied to the defendants for the payment of the aforesaid allowance, and it was paid to him by them accordingly.  At the same time they told him that unless they changed their opinion, they should erase his name from the list of voters.  He asked them if they had made a final decision.  They said no, they would inquire further, and hear him on the subject further at any proper time.  They inquired accordingly, and, hearing nothing more from Kelley, on the morning of the election day erased his name from the list.

The son of Kelley was then twenty-three years old,

and had been subject to fits from his eighth year; was of feeble health and intellect, unable to maintain and take care of himself; had always lived with his father, and been under his direction and care.

It appeared that the defendants acted honestly and diligently in this matter, and exercised their best judgment in coming to their aforesaid decision on Kelley's right of voting. Kelley offered his vote at the election, and it was refused.

If the court, on the foregoing case, are of opinion that the indictment cannot be sustained, it is to be dismissed; if otherwise, the defendants are to be held to answer further thereto.

*Walker*, attorney-general, for the State.

*Perley*, for the respondents.

GILCHRIST, J. This is an indictment founded upon the 21st section of the 25th chapter of the Revised Statutes.

This chapter, upon the manner of conducting elections, provides for a list of all the legal voters to be used at elections; and for making the necessary alterations and corrections of it, to correspond with the changes that occur from time to time, makes it the duty of the selectmen to hear all applications for the insertion of the name of any person upon the list, or for the erasure of any name therefrom, and to examine the party, or any witnesses thereto, upon oath, which may be administered by any member of the board. They shall insert the name of every legal voter omitted, and shall erase the name of every person not a legal voter. Sec. 3.

By the 21st section it is enacted, that "if any selectman, at any session holden for the correction of any list of voters, shall neglect or refuse to insert, on said list, the name of any person who is a legal voter, having satisfac-

tory evidence thereof," " or shall, at any time, insert on the list the name of any person not a legal voter, knowing such to be the case ; or shall knowingly erase therefrom, or omit to insert, the name of any legal voter, he shall be punished," &c.

The defendants, in the honest and diligent discharge of the duties prescribed by the third section of this chapter of the laws, erased the name of Kelley from the list, and refused to insert it. They did this with no intention to wrong the party so excluded, or to commit an act of injustice, but they did it in the exercise of their best judgment, in coming to their decision on his case.

Upon the supposition, then, that their decision was erroneous, the question presented by the case is, whether the indictment can be maintained.

Laws have been framed with a good deal of care, for the purpose of distinguishing, by plain and obvious lines, the persons who are entitled to vote at the elections of the various public officers, from those who are not. But there are still cases of no little difficulty, constantly arising under those laws, some of which might well tax the acumen of persons more accustomed to investigate such questions than many of those persons are who are required, in every town, to decide and to settle them.

They are questions, in short, in the decision of which errors are not unlikely to occur, and it is certainly an anomaly in the law if those who are charged with the duty of deciding them are liable to be charged criminally for forming an opinion that the court may, upon inquiry, pronounce to be erroneous.

Such is not the ordinary consequence of an error of judgment committed by officers clothed with a discretion, or with power of a judicial nature, in regard to specific matters. In such cases, if there be no remedy by appeal, considerations of public quiet and general policy require that the error should be submitted to, rather than that

those who are placed in the situation of judges should be intimidated in the discharge of their functions, or be made to suffer for an error that their utmost diligence and circumspection does not enable them to shun.

The statute upon this subject appears to us to have been wisely framed to guard the citizen against the abuse of the power necessarily entrusted to the selectmen to settle the claims of persons to the right of voting, by making it an offence in those officers knowingly to reject from the list the names of such as are legal voters; and that is the extent of their liability. The offence is not committed by the mere act of rejecting the name, but in doing it knowingly.

We have no doubt that the same idea is intended by the word "knowingly," in the clause in which it is used, as by the phrases used in the other clauses of the same section, denoting knowledge, or the *scienter*, and that it is equivalent to the words, "knowing such person to be a legal voter."

It seems to be a further inference, justly to be drawn from the nature of the power, and the objects to be secured, that the knowledge, to involve guilt, must be something more than a mere knowledge of the particular facts, and it must extend to and embrace the legal result. The selectmen must know that the name rejected is that of a legal voter; that the facts that have been exposed to the notice of the board are true, and that they do, in point of law, constitute the right of the party to vote. This is not a case in which knowledge of the law must be presumptively imputed to the party proved to be in possession of all the facts.

The case of *Blanchard* v. *Stearns*, 5 Met. 298, presents some analogies with this, but may be sufficiently distinguished. It was an action of debt for a penalty, founded upon a statute of Massachusetts that gave the action in favor of the party whose name should be unlawfully

rejected from the list; he first furnishing the selectmen with satisfactory evidence of his qualifications to vote. It was said in that case that no proof of malice was required, in order to charge the selectmen in an action by the party deprived. The decision is based upon *Lincoln* v. *Hapgood,* 11 Mass. 350, in which the reasons are fully assigned, and a distinction made between civil actions, which are brought to establish the plaintiff's rights, and criminal prosecutions, which have for their object the punishment of an offence against the laws, and the intimidation of persons prone to commit the like.

The cases in Massachusetts are, therefore, not to the point in sustaining this indictment. We think that neither the words of our own statute, nor the reason of it, require that the selectmen should be answerable in a public prosecution, whatever may be the case in an action by an individual, for a mere error of judgment in a case like this.

*Judgment for the defendant.*