Parker, J.
The grounds of the motion for a new trial in this case are contained in the exceptions which we have before us. (The judge here stated the substance of them from the papers.) The arguments at the trial, on the part of the defendants, were much the same as those which have been now urged ; and though it is true that a judge at nisi prius is often pressed by circumstances to make a hasty decision, and I have therefore no predilection for such decisions, yet I cannot say that my opinion is altered by the arguments I have now heard. The counsel for the defendants have certainly misapprehended the. direction given to the jury at the trial. It cannot be supposed to have been the judge’s intention to tell the jury that they were not to attend to, and weigh, the evidence themselves. The facts were found; they were the same as stated in the exceptions, and there was no counter-evidence. I am still of opinion that, after the facts were thus ascertained, the main question in the case was a question of law. The jury were directed to declare whether the facts alleged were proved, and that if they were proved, a question of law would then remain. The exceptions *244 are, perhaps, not so accurately expressed in this respect as they might have been.
The first question, therefore, which is now submitted to us, I consider to be this, — whether the direction of the judge upon this point, at the trial, was right or not; and to determine this, we must attend to the facts in the case.
It appears that Kilham was born in this county, and that soon after the battle of Lexington he took passage for Newfoundland, in a vessel confessedly belonging to a'n Englishman, in company with a young woman, to whom he was afterwards married. From his station in life, it cannot be presumed that he considered with much attention the consequences of the state of affairs at that | * 263 ] time. He knew, as a simple matter of * fact, that the battle of Lexington, had taken place, and he probably knew other important events of the day ; but he could not have taken into view the consequences which were to result from them. At Newfoundland, it seems, he was employed in working upon vessels, and in some instances upon British armed vessels. While there, he often expressed to Lilly, the person with whom he had contracted to work, his intention and determination to return to the United States. At the time when his contract, which was for six months, had expired, it is a public fact that all communication between the British territories and the United States had ceased, so that he could find no safe direct conveyance to his native country ; but in order to get back again, he was obliged to go to St. Eustatia, and from thence procure a passage for this country ; and we are to presume that he took the earliest opportunity to do this. It appears also that, while on board British vessels, he refused to fight against the Americans, and that the British, in consequence of his partiality for his countrymen, sequestered his property. It appears further that, when he returned to Salem, which was in 1780, he was received by his fellow-townsmen, and no notice was taken of his conduct, as betraying any hostility to his native country. He was made an officer of the militia, and for above twenty years exercised his right of voting, and enjoyed other rights of citizenship. •
On these facts, then, the question being whether he is to oe considered as an alien, I must say that he is not; that he did not lose his rights as a citizen of the United States. His absence from his country was temporary, and was for the purpose of getting a livelihood. These facts being found by the jury, I must still remain of the opinion that the question arising from them was a question of law.
The second exception to the judge’s direction is because he directed the jury that K. did not come within the act of 1779, there *245 having been no conviction pursuant to that law. The opinion given was, it is true, a sudden one; but upon greater deliberation, I do not think it was a wrong one. The act of 1779, according to the construction of the defendants’ counsel, * would [ * 264 ] operate to disfranchise the plaintiff, to make him an alien; but such acts, in my opinion, cannot operate ipso facto against any persons except those who are expressly named in them, and whose particular cases may therefore be presumed to have undergone an examination by the legislature. Persons who are .not. so named, who are in the situation of the plaintiff, have a right to claim a trial and hearing, before the act shall affect them. The act itself, indeed, points out no kind of trial in respect to the persons, but only the property, of those who are to be the subjects of its provisions ; and although it does not appear, by the judge’s report, that K. had any property upon which process could have been founded under the act, yet it does not by any means follow that his political rights were extinguished. These were of vastly more importance than his property ; and it cannot be presumed that the legislature intended to deprive him of them without a hearing, they not having expressly declared such intention in the act itself.
But what is the consequence of K.’s having no property ? The only consequence is, not that he could not have been convicted under that law, but that there is nothing in his case upon which this part of the act could operate. I must therefore remain of the opinion that, as the act of 1779 does not. name Kilham, and as his case has therefore not had even the sort of trial, or previous examination by the legislature, which we may presume the cases of those named in the Conspirators’ Act have had, — and as it does not appear that he has had any other trial or hearing, — the act does not of itself make him an alien. I therefore think a new trial ought not to be granted.
Sew all, J.
The direction of the judge is excepted to on two grounds. (His honor here stated them from the papers.)
As to the first point, I think the judge was right in assuming it as matter of law arising upon the facts submitted to the jury: the only question, then, is, whether he gave a correct opinion upon the facts.
It is said by the counsel for the defendants that Kilham is an alien by birth. This point was fully examined in the case of Henry Gardner against the same defendants. The doctrine of * the common law is, that every man born [ * 265 J within its jurisdiction is a subject of the sovereign of the country where he is born; and allegiance is not personal to the sovereign in the extent that has been contended for; it is due tc *246 him in his political capacity of sovereign of the territory where the person owing the allegiance was born. The king of Great Britain was the sovereign of this country until the commencement of the revolution; but immediately upon the separation of the two countries, the revolutionary government established over this territory claimed the allegiance of Kilham. The act of 1779, now cited against him, claims as subjects all those who are made liable to the penalties therein provided. They are called members of the state, and are declared to have incurred certain disabilities and forfeitures by actions done contrary to their duties as members of the state. I think, therefore, under both views of the case, — by the common law, and by the principles assumed in the statute against absentees, — it must be considered that Kis natural allegiance, and his reciprocal rights of protection and citizenship, remained with the sovereignty of his native country, not affected by the change in the person of the sovereign, unless he incurred an exclusion or disability by some ' positive act of the sovereign to whom he became subject by the revolution. Nor did the Declaration of Independence exclude him from the rights of citizenship. That declaration could not take away any existing rights, and it does not pronounce who were citizens and who were not. If K. was at that time a member of either of the United States, he was virtually a party to that instrument.
It is said that the statute of treasons excludes him from the rights of citizenship; but I cannot discern the construction by which that statute is made applicable to this case. That statute declares that persons abiding within this state owe allegiance to it, and are members thereof. Natural allegiance from birth or adoption is not distinctly mentioned, and if recognized by the statute, is included with the allegiance claimed upon established residence and domiciliary protection. This statute appears to me to express, though 1 cannot say that it has ever f * 266 ] *been understood to intend, that persons permanently resident within this state become members of the state, that is, citizens. If such residents are also natives of the state, that circumstance will not, of itself, exclude them from the character of members or citizens ; and for my part I see nothing in the statute which operates to the exclusion of Kilham.
The second exception to the direction of the judge is, because he instructed the jury that a conviction under the statute of 1779, against absentees, was requisite to bring K. within the intent, and operation of that act. I have already observed that the act itself is founded on the supposition of criminality in those who are made liable to the penalties and disabilities provided thereby. A mode of trial is *247 instituted, to ascertain the guilt of persons accused of the offences described. These trials, in their form and purpose, are more especially directed to those cases where a forfeiture of some real or personal estate had been incurred ; and if K. had no property in this country, and therefore could not be convicted by any process especially provided in the act, the inference from this circumstance may be that, in his particular case, the act could have no operation.
But further, if this statute were now the rule of decision, K. has not incurred the disability of alienage, according to the evidence stated. The statute provides against those who, having withdrawn themselves at the commencement of the revolutionary war, should not have returned into some one of the United States, and been received as a subject thereof. In enforcing this statute, it would be necessary, I conceive, that, at the time of the accusation, every circumstance constituting the offence, as specified by the law, should be provable against the party accused. If K. were now on trial for his supposed offence, as described by this statute, it would appear that he had withdrawn himself; but it would also appear that he had returned, and, as I infer from the circumstance of his remaining here unmolested, that he had been received as a member of the state, during the continuance of the war with Great Britain. I conclude, therefore, that K. has not been convicted ; and further, that he could not be convicted of the offence by which he is supposed to have incurred the disability of alienage, by force of the statute of 1779 against absentees.
* The more general principle, which ought to govern [ * ÍB67 J in cases of this kind, I take to be this ; that the treaty of peace between the United States and Great Britain determined the respective duties and rights of those who, before the revolutionary war, by which distinct communities were finally established, had been the subjects of a common sovereign. By that event, and the mutual agreement of the two nations, those who, by their adherence and residence, had remained the subjects of the king oU Great Britain, on the one part, and those who, by their adherence and residence, were then the people of the United States, on the other part, were reciprocally discharged from all opposing claims of allegiance and sovereignty. K., then an inhabitant of this territory, his native soil, was one of the people of the United States in the treaty witli Great Britain which terminated the revolutionary war; yet we are now called upon to reject him, and make him a British subject.
Upon the whole, I am of the opinion that the decisions and directions in this trial, so far as they have been brought into question before us, were consonant to law, and that a new trial ought not to be granted.
*248 Sedgwick, J.
If it were possible for me to entertain any doubts in this case, I should not now pronounce an opinion ; but neithei of my brothers doubting, and the question being of very great importance, I must give my opinion upon it at this time.
This Court will never send back parties to a new trial, when the merits of the case and the verdict agree with each other. As this is the fact in the present case, and as one of the points now before us was decided in Gardner’s case, (13) I shall confine myself'to those particulars in which the present differs from that case. The facts submitted to us, on which there is no controversy between the parties, render it undeniable that K. was entitled to vote, at the time when his vote was rejected by the defendants. I ground my opinion altogether upon the treaty of peace: I do not think it necessary to go through the various other acts which have been produced ; I lay them, and the authorities which have been read, out of my consideration. The treaty of peace was so made [ * 268 ] as to comprehend the rights * of subjects of Great Britain, and citizens of the United States. It was, in effect, a compact between the subjects of the King of Great Britain on the one part, and the citizens of the United States on the other. If K. is either of these, and not something different from each, then it is as near demonstration as any thing of this nature can be, that the case he makes out to us proves him to have been a citizen of the United States at the time his vote was refused, and if so, he was certainly entitled to vote. What are the facts ? — leaving out of the question Lilly’s deposition, which is not now before us. They are these ; that K. quitted the country and that he returned. The circumstances of his return are the best evidence that it was voluntary : he came back during the war between Great Britain and the colonies, and it is perfectly immaterial whether this was a civi, or any other kind of war. He came voluntarily, knowing that his services would be required, and his property and person became taxable to carry on the war. While the two parties, then, are contending, he joins the people of one party, and is received by them. If he had been within the law, the government might have then put him out of the country; might have made him liable as a traitor. He, however, as before observed, comes here, and places nimself in a situation to contribute to all the efforts and struggles of his country. Then comes the treaty of peace between the two countries, and finds him under these circumstances. Can it be supposed that either party to that instrument was treating with. *249 those, who were found under their own jurisdiction, under similar circumstances ?
The common-sense construction is, to consider all persons volun tarüy acting at the termination of the contest as comprehended in the treaty of peace, and as belonging to that party with which they were then acting. It was the intention of that contract, that no person should suffer in his liberty or property for what had passed • and no other construction can attain the objects contemplated by it. Kilham most certainly comes within it, and is therefore to be considered as a citizen of the United States. The merits of the question, then, having been tried, I cannot but concur with my brothers in the opinion that a new trial ought not to be granted. (a)

Judgment according to verdict.

 That a.conviction under the statute of 1779 was necessary, &c.

 Ainslie vs. Martin, 9 Mass. Rep. 454. — Martin vs. Woods, 9 Mass. Rep. 377. — Manchester vs. Boston, 16 Mass. Rep. 230. — Cummington vs. Springfield, 2 Pick. 394 —Auchmuty vs. Mulcaster, 5 B. & Cr. 775. — Bright, Lessee, vs. Rochester, 7 Wheat 535. — Doe, dem. Thomas, vs. Acklam, 2 B. & Cr. 779.

 Rastall, 368, 482, 483.