The opinion of the Court was delivered at this term by
Parker, C. J.
As to the first point reserved for the considera-
tion of the Court, we are of opinion that the plaintiff had a legal right to vote in the choice of representatives in Petersham. He was an inhabitant of that town, and resided there, unless his absence for less than three months, during which time he voted, at .the April meeting in Belchertown, * in the choice of [ *353 ] governor and lieutenant-governor, should operate to change his residence. And we cannot think that these facts deprived him of his franchise in his native town.
He went to Belchertown for a specified and temporary purpose; and had frequently done it before, always considering Petersham as his home, and always returning there after a short absence, (a)
With respect to his voting in Belchertown, we know it is the practice in many towns to admit any citizens, otherwise qualified, to vote in the election of governor, although not inhabitants of the town, upon the idea that, as this officer presides over the whole state, every citizen of the state ought to be permitted to vote for him, although notoriously being in the town without any intention of remaining there. Other towns, from a different construction of the constitution, *322 have permitted persons so situated to vote for senators, and not for governor. Both these practices may be wrong; but we are not now called upon to decide concerning them. The question before us is, Does the act of voting, under these circumstances, by an inhabitant of another town, by permission of the selectmen, deprive him of the right to vote at another election in his own town, in which he is domiciliated, but from which he has been absent for a few weeks on business? We think it does not, and that the facts proved clearly maintain the plaintiff’s right to the privilege of which he was deprived.
But a more difficult question remains; and that is, whether the defendants in this case, who are public officers without reward, and upon whom the difficult task is imposed by law of deciding suddenly upon the qualifications of voters, are liable in damages for an error of judgment only, when they have been guilty of no malice, and have exercised an honest and fair judgment upon the question before them. The case does not impute any corrupt motive, or even any negligence in performance of duty, to the defendants. The presumption therefore must be, that they erred through ignorance.
[ * 354 ] * This is not a new question with us, although it has never been formally decided by the whole Court. In the case of Gardner vs. Ward & Al., (1) which is the first action of the kind in this state of which we have a report, no question appears to have been made, by the counsel or the Court, as to the liability of the selectmen, if they erroneously decided against the plaintiff’s rights, although his vote was rejected in that case upon the ground of his alienage — a point which honest and well-informed men, not lawyers, might determine wrongly with the best possible motives.
In a like case, which occurred the succeeding year in the same county, (2) we find this objection to the action in the argument of the counsel; but no reply to it from the other side, and no notice taken of it by the Court; from which we may infer that it was not much relied on as an important point in the cause.
Since that'time, however, actions of this kind having multiplied in all parts of the commonwealth, in consequence of an increased interest in the elections, it has become a matter of serious consideration, whether the selectmen of towns, acting fairly in discharge of a duty imposed upon them by law, shall be exposed to actions for a mere mistake of the law, or misapprehension of facts; whether, in *323 truth, they are not to be viewed as judge, and so entitled to the common privilege of the judicial character, not to be punished, or to be responsible in damages, for any consequence of a judgment merely erroneous.
I confess I have for some time maintained the affirmative upon this question, and have, in one or two instances at nisi prius, given this opinion, reserving a right to the plaintiffs to have the question decided by the whole Court. But long reflection upon the subject, and the reasoning of those of my brethren who have inclined to the opposite opinion, have finally satisfied me that I was mistaken; and that, however hard such an action may be against selectmen, it is essential to the rights of the citizen that it should be sus tained.
* The right of voting, in such a government as ours, [ * 355 ] is a valuable right; it is secured by the constitution; it cannot be infringed without producing an injury to the party; and although the injury is not of a nature to be effectually repaired by a pecuniary compensation, yet there is no other indemnity which can be had. In such a case, as in the case of an injury to the reputation and sometimes to the feelings, the good of society, and security against a repetition of the wrong, require that the suffering party should be permitted to resort to this mode of relief.
The selectmen of a town cannot be proceeded against criminally for depriving a citizen of his vote, unless their conduct is the effect of corruption, or some wicked and base motive. If, then, a civil action does not lie against them, the party is deprived of his franchise without any relief, and has no way of establishing his right to any future suffrage. Thus a man may be prevented, for his life, from exercising a constitutional privilege, by the incapacity or inattention of those who are appointed to regulate elections.
The decision of the selectmen is necessarily final and conclusive as to the existing election. No means are known by which the rejected vote may be counted by any other tribunal, so as to have its influence upon the election; or at least no practice of that kind has ever been adopted in this state. There is, therefore, not only an injury to the individual, but to the whole community; the theory of our government requiring that each elective officer shall be appointed by the majority of the votes of all the qualified citizens, who choose to exercise their privilege.
Now, if a party duly qualified is unjustly prevented from voting, and yet can maintain no action for so important an injury, unless he is able to prove an ill design in those who obstruct him, he is entirely shut out from a judicial investigation of his right; and suc *324 ceeding injuries may be founded on one originally committed by mistake. He may thus be perpetually excluded from the common privilege of citizens, without any lawful means of as- [ * 356 ] serting his rights, * and restoring himself to the rank of an active citizen. Such a doctrine would be inconsistent with the principles and provisions of our free constitution, and must give way to the necessity of maintaining the people in their rights, secured to them by the form of their government.
This principle has not been perhaps precisely settled in England, although I apprehend, in the case of Ashby vs. White, (3) the principle upon which this action is to be maintained was fully recognized by Lord Holt, and afterwards by the House of Lords, who reversed the judgment given by the three other judges of the King’s Bench, against the opinion of that eminent judge. The argument upon which that case turned was, that an actual injury had been done, and that it was inconsistent with the character of the English laws that there should be no remedy for a subsisting injury. No question seems to have been made in that cause of malice in the returning officer; probably none was suggested. But the officer was finally holden to be answerable in an action on the case, on the mere ground that he had refused to receive the vote of a subject, who was entitled to vote. This is exactly the present case; although, perhaps, we are not authorized to say that malice, or fraud, or corruption, was not proved in the case. But it does not appear that any such motive was considered by . the judge as influencing the determination.
In a later case, however, of Drew vs. Coulton, cited in a note to the case of Harman vs. Tappenden & Al., (4) Mr. Justice Wilson nonsuited a plaintiff in such an action, because it did not appear that the defendants acted maliciously. The nonsuit being acquiesced in by eminent counsel, it is fair to suppose that an action of the case cannot now be maintained in England for rejecting a vote, unless the injury is proved to have been done maliciously.
But in England another remedy exists, which does not exist with us. The electors there all vote viva voce; their names are taken down by the returning officer, as well those whose votes [ * 357 ] are received as those who are not permitted * to vote, and also the name of the candidate for whom they would vote; of which a return is made to the House of Commons. There a revision by a committee takes place ; and the rejected .vote is counted, and has its effect upon the election, if it was unlawfully *325 rejected. But with us there is no such remedy; and without an action there is no remedy at all, either for the immediate or any subsequent election.
But notwithstanding we deem it necessary that this action should be supported, as the only mode of ascertaining and enforcing a right which has been disputed, we do not think it ought to be a source of speculation to those who may be ready to take advantage of any injury, and turn it to their profit, to the vexation and distress of men who have unfortunately been obliged to decide on a question sometimes intricate and complicated, but who have discovered no disposition to abuse their power for private purposes. And we therefore think that juries should always, in estimating the damages, have regard to the disposition and temper of mind discoverable in the act complained of; and probably the Court would determine that a sum, comparatively not large, would be excessive damages in a case where no fault, but ignorance or mistake, was imputable to the selectmen.
On the other hand, in cases in which it should be apparent that there was a wilful deviation from duty, and a wanton rejection of a vote, from party motives, or from personal hostility to the citizen whose vote is refused, or even a negligent or inattentive examination of his claim, exemplary damages would be required, as a compensation to the injured party, and an expiation of the high and aggravated offence against the civil and political privileges of the citizen.
Upon the whole, we see no better way, than to leave cases of this kind to the jury, under the direction of the Court; nor have we any doubt that a correct public sentiment will apply the remedy in each case, proportionately to the offence; so that, on one. hand, a man who has been, without any fault of his own, deprived of a valuable privilege, * should find in- [ * 358 ] demnity and protection in the laws ; and on the other, that men, who are in places of public trust, should not be subject to too severe a penalty, for an involuntary failure in a proper performance of their duty, (a)

Judgment on the verdict.

In an action which sounded wholly in damages, the plaintiff had a verdict for five , dollars only; the Court having refused to allow full costs, moved for on the ground that the plaintiff had a reasonable expectation of larger damages, refused also to grant a new trial for the smallness of the damages, in order that, at a future trial, sufficient damages might be obtained to carry full costs.
The jury in this case having assessed the plaintiff’s damages at the sum of 5 dollars only, his counsel moved that full costs should be allowed him, upon the ground stated in the statute of 1786, c. 52, <§> 3, that he had a reasonable expectation of larger damages than was within the jurisdiction of a justice of the peace to assess.
The Court not thinking it a proper case for their interference, the counsel for the plaintiff moved that a new trial should be granted him, because of the smallness of the damages assessed by the jury ; and they argued that the jury having expressed, in their verdict, that the plaintiff should have full costs, although such expression could have no legal effect or operation, yet it was plain that, by rendering judgment for the plaintiff for 5 dollars damage, and one fourth of that sum as costs, the real intentions of the jury in finding their verdict would be wholly counteracted and frustrated. Instead of affording him compensation for the injury he had proved himself to have suffered, such a judgment would be a severe penalty upon him for seeking his legal remedy.

For the defendants,

it was said that, if the motion for a new trial prevailed, it must be on the ground that another jury should give the plaintiff 15 dollars more in damages than they found him entitled to, in order that he might recover the costs of his action, when their own verdict would show that he ought to have resorted originally to an inferior tribunal for his remedy.

Per Curiam.

The jury went out of their province in awarding costs for the plaintiff. That part of their verdict is merely void; and since the statute establishing Circuit Courts of Com- [ * 359 ] mon Pleas, (5) it is beyond the power of the * Court to give full costs in such a case as the present. Nor can we grant a new trial on the ground taken for the plaintiff. For in such case the jury must award a greater sum in damages than in their consciences they think due to him, in order that the law may award him his costs. It would be, we think, an improper interference on our part. If the legislature thought it expedient, they might provide that costs should in all cases be in the discretion of the Court; or, if that should be preferred, under the direction of the jury in each case. The plaintiff can take nothing by his motion.

 Commonwealth vs. Walker, 4 Mass. Rep. 556. — Abington vs. Boston, 4 Mass Rep. 312. — Granby vs. Amherst, 7 Mass. Rep. 1. — Cutts vs. Haskins, 9 Mass. Rep 543. — Whitney vs. Williams, post, 424. — Harvard College vs. Gore, 5 Pick. 370.

22-10"> 2 Mass. Rep. 244, in notis.

 Kilham vs. Ward & Al. 2 Mass. Rep. 236

 2 Lord Raym. 938.

 1 East, 563.

 It would seem that the selectmen did not merely act ministerially, but judicially in refusing the plaintiff’s vote. And, in general, no action can be supported against any person acting judicially, within the limits of his jurisdiction, for any judicial act, however erroneous his decision or malicious his motive.—5 Mass. Rep. 547. — 1 N. H. R. 88. — 1 Salk. 306.—2 D. & E. 305.—5 D. & E. 186. —11 Johns. 114. — Lord R. 466. — 6 D. & E. 449. — 3 M. & S. 325. — 2 Bay. 169. — 4 Bibb, 28. — 3 Caines’s R 170. —17 Johns. 145. — And see note to Briggs vs. Wardell, 10 Mass. Rep. 365.

 Stat. 1811, c. 32, § 4.