### JOSHUA W. BLANCHARD vs. CHARLES STEARNS, Jr. & others.

An action may be maintained against selectmen for refusing to receive the vote of a qualified voter, or for omitting to put his name on the list of voters, without proof of malice. The St. of 1822, c. 104, and Rev. Sts. c. 3, made no change in the law on this point.

But, in order to maintain such action, it must be shown that the plaintiff furnished the defendants with sufficient evidence of his having the legal qualifications of a voter, and requested them to insert his name on the list of voters, before the defendants refused to receive his vote, or omitted to insert his name on such list.

And in such action, the declaration must aver, specifically, all the facts which consti tuted the plaintiff's qualifications to vote at the meeting at which his vote was refused, and that he, before offering his vote, furnished the defendants with sufficient evidence of his having those qualifications.

THIS was an action against the selectmen of the town of Brookline for refusing to put the plaintiff's name on the list of voters of that town, and for refusing to receive his vote, at the election of governor, &c. in November 1840. Defence, that the plaintiff was not a qualified voter in that town, at that time. Trial in the court of common pleas.

The following is the report of the case, as drawn up by the judge before whom it was tried : " There was no evidence introduced tending to prove that the defendants acted corruptly or maliciously ; or that the refusal to put the plaintiff's name on the

Blanchard *v.* Stearns & others.

list of voters, or to receive his vote, was wilfully done or know-
ingly wrong ; or that the defendants were actuated by improper
motives, or that they acted contrary to their own conviction.
There was conflicting testimony as to the plaintiff's legal right
to vote, or to have his name placed on the list of voters , and
there was evidence tending to show that the defendants had care-
fully considered the subject, before they refused to place his
name on the voting list and to receive his vote, and had taken
more than usual pains to inform themselves upon the subject, by
consulting counsel, &c. in order to decide rightly, and arrive at
a correct result.

" Upon these facts and this evidence, the court instructed the
jury, that if they should be satisfied that the plaintiff was legally
entitled to vote, and to have his name put on the voting list, at
the time aforesaid, they must find the defendants guilty, notwith-
standing they acted according to their honest conviction of their
duty and of the legal rights of the plaintiff, and not corruptly or
wilfully, or with improper motives, or knowingly wrong ; and
that the defendants were liable even for an honest error of judg-
ment in these particulars."

The jury returned a verdict for the plaintiff; whereupon the
defendants alleged exceptions to the instructions of the court.

*B. R. Curtis & Clarke*, for the defendants.

*Hallett*, for the plaintiff.

The opinion of the court was made known at the October
term 1843, by

SHAW, C. J.*   The court have regarded the present as a
very important question, deeply affecting, on the one hand, the
rights of all those claiming the privilege of voting in the election
of public officers, and on the other, the safety and security of
those, who are called, by their official duty, to preside at pop-
ular elections, and to decide on the qualifications of voters.
Whilst it is essential, as well to the true theory and principles of
representative government, as to the just rights both of electors
and candidates, that no unnecessary obstruction be thrown in the

* *Hubbard*, J having been of counsel, did not sit in this case.

way of the exercise of his just right of suffrage by the qualified voter, it is equally essential that the faithful and conscientious officer should be upheld and encouraged in rejecting the claim of any unqualified person, who may attempt to usurp that valuable privilege.

It has been argued in the present case, that no action ought in principle to be maintainable against public officers, who are required, in behalf of the community, to preside at elections and decide on the qualifications of electors, and whose functions are, in this respect, to some extent judicial, for refusing to receive a vote, or refusing to place the name of a claimant on the list of voters, without averring and proving that such refusal was malicious and wilful ; by which is to be understood, from bad motives, and contrary to his own honest conviction. But although much may be said in favor of such a rule of law, and although such is the rule in England and most of the States of this Union, yet we consider the law of Massachusetts to be settled otherwise, by a series of decisions. *Kilham* v. *Ward*, 2 Mass. 236. *Lincoln* v. *Hapgood*, 11 Mass. 350. *Henshaw* v. *Foster*, 9 Pick. 312.

The same rule was recognized, rather than adjudged, in the case of *Capen* v. *Foster*, 12 Pick. 485. That action, however, proceeded upon very different grounds. It was an action against the warden and inspectors of a ward of the city of Boston, who are mere executive officers, having no authority vested 'n them to decide on, or inquire into, the qualifications of voters. The case therefore did not render it necessary to consider, whether the *St.* of 1822, *c.* 104, § 4, made any change in the former provisions of law, which allowed an action against selectmen, who are made judges of the qualifications of voters, for refusing to allow a claimant's right to vote, without averment and proof that such refusal was wilful and malicious. That case, therefore, though decided since the statute was passed, has no direct bearing upon the present.

The decision of the present case depends upon Rev. Sts. *c.* 3, § 9, following substantially, if not in all respects, the provisions of the *St.* of 1822. These provisions have, to some ex-

tent, altered the law upon this subject.   They still assume the principle, that selectmen may be liable in a civil action for dam-- ages, for refusing to permit a person to vote, who is legally qualified ; and that without proof of malice, or any wilful and corrupt purpose.   But they establish several prerequisites, to be observed by all persons claiming the right to vote, which, without in the least impairing the rights of qualified voters, may contribute considerably to the protection and security of those selectmen, who intend to act with honesty, fidelity and firmness, in the discharge of their responsible duties.   Formerly, all that was requisite to be averred and proved, in order to maintain the action, was, that the plaintiff had a legal right to vote, that he requested to have his name put upon the list of voters, and tendered his vote, and that the selectmen declined putting his name upon the list, and refused to receive his vote.

But the provision of the Rev. Sts. *c.* 3, § 9, is, that the se lectmen shall not be held answerable for any omissions in said list of voters, nor for refusing the vote of any person, whose name is not borne thereon, unless the person whose name may have been so omitted, shall, before offering his vote, furnish them with sufficient evidence of his having the legal qualifications of a voter, and shall have requested them to insert his name on said list.

The first section of the same chapter declares what those qualifications are ; for though the qualifications for voters for some of the officers of state are prescribed by the constitution, and cannot therefore be altered or modified by law ; and though these qualifications for voters for governor, senators and representatives, were different from each other, under our constitution as first framed and adopted, yet by the amendment made by the convention of 1820, these qualifications were made uniform for all these officers ; and by the *St.* of 1822, soon afterwards passed, and continued by the revised statutes, the same qualifications were fixed for voters for other officers, where they were not fixed by the constitution ; so as to have one uniform rule for all cases.   These qualifications are thus declared by Rev. Sts. *c.* 3, § 1 : " Every male citizen of twenty one years of age and

upwards, (except paupers and persons under guardianship,) who shall have resided within the State one year, and within the town, in which he may claim a right to vote, six months next preceding any election of town, county or state officers, or of representative to congress, and who shall have paid, by himself, or his parent, master or guardian, any state or county tax, which shall, within two years next preceding such election, have been assessed upon him, in any town of this State, shall have a right to vote in all such elections." This statement of qualifications is in exact accordance with the Amendments of the Constitution of 1820, art. 3.

Recurring then to § 9 of the same chapter, which declares that selectmen shall not be answerable, but in certain specified cases, it is necessary for a plaintiff, in order to maintain such an action — according to the well known rules of pleading, applicable to declarations — to aver specifically all the facts necessary to show that his case is within the statute. He must now therefore aver, not only in general terms, that he was a legal voter, but the facts, which constituted him a legal voter ; as that he was twenty one years of age and upwards, that he had resided within the State, at some place named, (or several places, as the case may be,) one year next preceding, and within the town, six months next preceding ; that he had paid a tax, or that a tax had been paid for him, which had been assessed upon him, within two years next preceding ; stating in what town the same had been so assessed, and whether paid. by himself, or by another, as the case may be ; and if by another, by whom, naming the person, and in what capacity ; and more especially, that before offering his vote, and at a meeting of the selectmen, held for that purpose, he had *furnished* the selectmen with *sufficient evidence* of his having these qualifications.

The issue therefore is, not upon the fact of his having been duly qualified, and having a right to vote ; but upon the fact of his having produced and seasonably submitted to the selectmen sufficient proof of that right. The law thus, as it should do, imposes upon the claimant the duty of preparing and exhibiting the evidence of his title ; and it imposes upon selectmen the

duty of coming to a just and reasonable decision upon those proofs ; and the question will be for the jury, upon such issue, whether the claimant, whose vote was rejected, was at the time possessed of the qualifications entitling him to vote ; whether he seasonably submitted the proof of those qualifications to the selectmen, and requested his name to be placed on the list ; and whether those proofs were sufficient to warrant and require them so to do. We do not mean to say that the proof must be such as shall be satisfactory to the selectmen, to whom it is submitted ; because, if it were so, and still they refused to allow the applicant's claim to vote, it would be against their own conviction of right, and equivalent to a wilful and malicious rejection of a voter's claim. But it must be such proof as a jury may now say was reasonably sufficient to satisfy men of fair and impartial minds, and which ought to have induced the selectmen, in the particular case, to allow the applicant's name to be placed on the list.

And it follows as a necessary consequence from this view, that the plaintiff in such action will not be permitted to offer proof to the jury, in support of his title, which he did not lay before the selectmen, when he made his claim. The question is not, whether it now appears that he had a right to vote ; but whether he offered proof of it, at the time. And this proof should be reasonably satisfactory, and not such as leaves the question in doubt.

Some of the requisite facts, constituting the qualifications of a voter, are simple in their nature, and in general may be easily proved ; as the age and citizenship of the claimant, the assessment of a tax upon him, in some town of the Commonwealth, within two years, and the payment of such tax, by himself, his parent, master or guardian. But the question of residence, within the State, one year, and within the town, six months, may be, and often is, one of considerable difficulty. It is often indeed, and perhaps in the majority of cases, as simple and easy of proof as the others ; as where a person was born and has lived all his life, in one town, or, for a long term of years, had a fixed abode in one place. The term " resident " and " in-

habitant," in this sense, are equivalent, and are so declared by the Rev. Sts. *c.* 2, § 6, clause 7th. Both terms indicate the place of one's home or dwelling place, which depends on the common law doctrine of domicil. The constitution has attempted to give a definition upon the subject, as follows : " And to remove all doubts, concerning the meaning of the word ' inhabitant,' in this constitution, every person shall be considered as an inhabitant, for the purpose of electing and being elected into any office or place within this State, in that town, district, or plantation, where he dwelleth, or hath his home." This provision was avowedly intended to remove all doubt, and seems to be precise and accurate ; but for practical purposes, it leaves the point nearly in the same uncertainty as before, upon the question of fact, as to what is the place of one's home or domicil. In many, indeed in most cases, the question of domicil, or residence, will depend upon a few simple and decisive facts ; but in others, the evidence is so strong in regard to two or more different places, that a slight circumstance will turn the balance. *Lyman* v. *Fiske*, 17 Pick. 231. *Thorndike* v. *Boston*, 1 Met. 242. *Sears* v. *Boston*, 1 Met. 250. But in all cases, it is a question of fact, to be decided upon evidence. The presumption, in the absence of proof, is, that the selectmen decided right; and this presumption will stand till the contrary appears. This presumption applies in favor of selectmen, as well to the correctness of their decision on the subject of residence, as of age, citizenship, and the assessment and payment of taxes ; and it is a presumption entitled to greater consideration in doubtful cases of domicil, where very competent judges might well think differently in regard to the preponderance of the evidence, and very honestly come to opposite conclusions, upon the same statement of facts.

Applying these rules and principles to the present case, the question is, whether the direction, given by the learned judge of the court of common pleas, at the trial, was correct in point of law. It is very clear from the bill of exceptions, that there was no evidence to show that the defendants acted maliciously, or decided hastily, or without due consideration  On the con-

trary, it appears that they took more than usual pains to inform themselves on the subject. It furthermore appears that there was conflicting testimony upon the plaintiff's right to vote, or to have his name placed on the list of voters. Upon this evidence, the court instructed the jury, that if they should be satisfied that the plaintiff was legally entitled to vote, and to have his name put on the voting list, at the time aforesaid, they must find the defendants guilty, notwithstanding they acted according to their honest conviction of their duty, and of the legal rights of the plaintiff, and not corruptly or wilfully, or with improper motives, or knowingly wrong, and were liable even for an honest error of judgment in these particulars.

The court are of opinion that these instructions cannot be supported. The question seems to have been left to the jury, solely upon the plaintiff's right to vote, as determined by the evidence offered at the trial, and not upon the evidence furnished to the selectmen, and the sufficiency of that evidence. For aught that appears, the evidence offered at the trial may have been much stronger than that furnished to the selectmen, before the meeting ; and therefore the jury might have found, consistently with these instructions, that the plaintiff had now clearly proved his right to vote ; and yet, had it been so left to them, they might have found that sufficient evidence of that right was not furnished to the selectmen before the meeting. The court are therefore of opinion, that the verdict must be set aside, and a new trial granted.