Lane, C. J.
The first question arising is, whether such a suit is maintainable against officers like these, without averments and proof of malice. The negative is holden in some of the United States: 6 Johns. 114; 1 New Hamp. 88; 6 Serg. & Rawle, 35; and such seems to be the law of England, 1 East, 555. A different doctrine has obtained in Massachusetts, 2 Mass. 236; 11 Mass. 350; 7 Pick. 485; and this position conforms to the opinion of Holt, in Ashby v. White, Ld. Raym. 938. It is generally true, that no suit lies against an officer, for a mistake in the exercise of his judicial discretion; but when we reflect how highly the privilege of voting is generally valued, and that the legislature has provided, and the forms of law admit no other remedy than this action, we unite in the opinion, that a necessity exists for entertaining this remedy. In the absence of malice, where the suit is brought merely to assert the right, the damages will be nominal and small. It is only in cases of intentional injury, arising from corrupt motives, that the jury will be likely to inflict a severe penalty.
The other question depends upon the construction of that passage of the constitution, “free white citizens,” whether it ^excludes from voting all persons having the intermixture of any other blood than that of entirely white persons. There have been, even in this state, since its organization, many persons of the precise breed of this plaintiff, I mean the offspring of whites and half-breed Indians, who have exercised political privileges and filled offices, and worthily discharged the duties of officers. One such is now a clerk of this court, and two are now members of this bar, and disfranchisement, for this cause, will be equally unexpected and startling.
We regard this matter as clearly settled by the interpretation which the expression in the constitution has received by this court, on the circuit and in bank. In 1831, in the case of Polly Gray v. State of Ohio, 4 Ohio, 354, and in 1833, in the case of Williamson v. School Directors, etc., Wright, 178, it was held that, in the *321 constitution, and the laws on this subject, there were enumerated three descriptions of persons — whites, blacks, and mulattoes-upon the two last of whom disabilities rested ; that the mulatto was the (middle term between the extremes, or the offspring of a white and a black; that all nearer white than black, or of the grade between the mulattoes and the whites, were entitled to enjoy every political and social privilege of the white citizen; that no other rule could be adopted, so intelligible and so practicable as this; and that further refinements would lead to inconvenience, and to no good result.
A majority of the court abide by this construction.
Judgment for plaintiff.