ALDEN GRIFFIN *vs.* ABRAHAM RISING, Jr. & others.

An action cannot be maintained against assessors, by an individual who is liable to taxation, for their omission to tax him, whereby he loses his right to vote at an election, unless it be shown affirmatively that they omitted to tax him, wilfully, purposely, or with design to deprive him of his vote; or unless they had actual knowledge of his liability to taxation, so plain and obvious, that a sinister purpose, and wilful omission to tax him, in pursuance of such purpose, may be reasonably inferred by a jury.

THIS was an action of trespass upon the case, in which the plaintiff alleged, in his declaration, that the defendants were legally chosen and sworn as assessors of the town of South-wick, in April 1844, and thereby became bound to assess a poll tax upon every male inhabitant of said town between the ages of sixteen and seventy years, and also to apportion and assess upon every citizen of said town, possessing property liable to taxation, a town, county and state tax upon their said property; that the plaintiff was then, and on the 1st of May following, a citizen of said town, of the age of thirty years, and was liable to be taxed and assessed a poll tax therein; that from the 1st of June 1840, to the day of the commencement of this action, (January 10th 1845,) he was seized and possessed of real and personal estate, in his own right, liable to taxation within said town; that the defendants, previously to their making a list of persons to be taxed in the year 1844, well knew that the plaintiff was liable to be taxed as aforesaid; yet that the defendants, well knowing the premises, neglected and refused to assess a poll tax upon his person, or a tax upon his property, or upon any part thereof, in the year aforesaid: That a legal meeting of the inhabitants of said town was held on the 11th of November 1844, for the choice of electors of president and vice president of the United States, a governor of this Commonwealth, a member of the congress of the United States, two senators, for the district of Hampden, to the senate of the then next general court, and a representative from said town to said general court; that at said meeting, by reason of the neglect and

refusal of the defendants to impose and assess a tax upon him as aforesaid, he was unable to vote for either of the officers aforesaid, or to act in said meeting, and that he was not a qualified voter, so to vote, in consequence of said neglect and refusal of the defendants; that at said meeting he offered his vote, for deposit in the ballot box, to the defendants, who were the acting selectmen of said town, and presiding at said meeting, and that said vote was refused to be deposited by them, in consequence of their said neglect and refusal as aforesaid.

The defendants pleaded the general issue, and filed the following specifications of defence: " 1st. That the plaintiff, at the time mentioned in his declaration, was a person who, by reason of infirmity and poverty, was unable, in their judgment, to contribute towards the public charges. 2d. That the defendants had no satisfactory evidence, at the time aforesaid, that the plaintiff was resident in the town of Southwick, on the 1st of May 1844. 3d. That the plaintiff did not bring in to the defendants a list of his polls and estate, as by law required; they having given due notice to the inhabitants of said town to bring in such lists."

At the trial in the court of common pleas, before *Colby,* J. after the evidence on both sides was introduced, the defendants requested the judge to instruct the jury (among other things) that the plaintiff could not maintain his action, unless he proved that the defendants, in omitting to place his name upon the tax list, did not act with fidelity and integrity; and that, in making such omission, they acted contrary to their own convictions of duty. The judge declined so to instruct the jury, but instructed them substantially as follows: That the plaintiff must prove that he was a proper subject of taxation: That if the defendants knew that he was a proper subject of taxation, and without any legal excuse or justification neglected or refused to tax him, they were liable in the present action; or if they did not know the said facts, but neglected to make suitable inquiries, or did not use due diligence to ascertain the facts, they would also be liable: That

if persons neglect to bring in lists of their polls and estate, the assessors would not therefore be justified in excluding all persons so neglecting from taxation, but it would still be their duty to tax all persons whom they knew to be proper objects of taxation, and to use due diligence in making inquiries both as to persons and property : That the defendants had a discretionary power to exempt persons from taxation, who were, by reason of age, poverty or infirmity, unable to contribute to the public charge, and if they had honestly and faithfully, in the exercise of their judgment, excluded the plaintiff, for such cause, they would not be liable ; but that, upon this point, the burden of proof was on the defendants, to show that such was their judgment.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions to the judge's instructions.

*Leonard,* for the defendants.

*R. A. Chapman & W. G. Bates,* for the plaintiff.

The decision was made at September term 1847.

SHAW, C. J. This is an action upon the case, against the defendants, as assessors of the town of Southwick, averring that in May 1844, the plaintiff was liable to taxation in that town, both for his poll, and for real and personal property; that this was well known to the defendants; that the defendants neglected and refused to assess a poll tax upon his person, or a tax upon his property; that afterwards, at a meeting for elections in said town, he offered his vote, which was refused; so that, by reason of their neglect and refusal to tax him, he lost his right to vote. The case comes before this court upon exceptions to the decisions and directions of the court of common pleas, before which the cause was tried.

It is stated as a fact, both in the declaration and in the bill of exceptions, that the defendants were, at the same time, assessors and members of the board of selectmen. We cannot, however, perceive that this circumstance can make any difference. The offices are distinct, and the circumstance, that they were held by the same individuals, was a casual coincidence. The fact that the plaintiff offered his vote at

29 *

a legal town meeting. it seems to have been proper to prove, because it tended to establish the *per quod* — the fact, that he actually lost the privilege of voting *by means* of the neglect of the assessors to tax him. But the defendants, as select-men, were undoubtedly right in refusing to permit him to vote, if his name was not on the list; and they also did right in not putting his name on the list, if he had not been taxed and paid a tax, agreeably to the requisition of the constitution, to qualify him as a voter. They were therefore chargeable with no breach of duty, or wrong to the plaintiff, in declining to receive his vote. And the question is brought back to the point whether, as assessors, they are liable to an action, for a breach of duty towards him, in not assessing a tax upon him, which, if paid, would have given him a qualification, which was wanting without it.

The case of a suit against selectmen, for refusing the vote of a qualified voter, and that of assessors, neglecting to tax a citizen, by means of which he is deficient in one of the qualifications of a voter, are manifestly quite distinguishable. In the former, the selectmen act directly upon the party's claim of right to vote, which is regarded as a valuable personal right; and if his vote is refused, supposing him entitled to vote, it is regarded in law as a direct violation of this personal right. But although assessors owe a duty to their constituents and to the public, to assess a tax on every one liable to taxation, yet the right of an individual to be taxed is not *prima facie* a beneficial right to him, and by omitting him they do him no direct wrong. If it operates indirectly to deprive him of a privilege, before it can be charged as a personal injury to him, it must be shown to be done for that or some other sinister or wrong purpose. The court are therefore of opinion, that the assessors are not liable to an action by an individual, who in fact was liable to taxation for his property or poll, for simply omitting to tax him, unless it be shown affirmatively that they omitted to tax him, wilfully, purposely, or with design to deprive him of his vote, or unless they had actual knowledge of his liability to taxation,

Griffin *v.* Rising & others.

so plain and obvious, that a sinister purpose, and wilful omission to tax him, in pursuance of such purpose, may be reasonably inferred by a jury.   In such case, it would be proper to leave the evidence to a jury, with directions to find for the plaintiff, if they should find that the assessors wilfully omitted to tax the plaintiff, knowing him to be liable to taxation, for the purpose of depriving him of his right to vote, or otherwise to injure and oppress him.

If it be said that it would be impossible to prove that such omission was wilful or designed, we think it may be answered, that it is the same with all proof of unlawful purpose or criminal intent.   It is an act of the mind, and cannot be directly reached.   But, as in all other cases, it may be inferred from outward acts and notorious circumstances, and by confessions or declarations.   Supposing a man of mature but not of advanced age, in possession of property, and apparently in good circumstances, formerly taxed, who had paid his taxes without complaint or objection, omitted to be taxed, with a heated and sharply contested election in prospect ; these and various other circumstances tending to the like conclusion would be evidence, from which, if satisfactory, a jury might infer, especially if connected with any statements or declarations on the part of the assessors to the like effect, that he was wilfully omitted.

Again ; if the complainant, being of a proper age, and otherwise liable to taxation, has given in his list of polls and estate, as he has a right to do, and as he must be notified to do, his case is brought directly to the notice of the assessors, and if omitted, under these circumstances the inference would be very strong, that it was done purposely.   We do not mean to say that giving in a list is indispensable ; the party's liability may be so notorious, that it may amount to proof of actual knowledge, though no list is brought in.   But it is one of the means of proving wilful omission.

The rule must be general for all towns ; but in the application of it, and the inferences to be drawn from particular facts, there is a great distinction between small towns of few

inhabitants, and cities and large and populous towns.   In small towns, almost every inhabitant, especially every holder of property, is usually known to some of the assessors, or other officers, and their knowledge of his residence and liability to taxation might be more readily inferred.   But in populous towns, especially in seaports, where many of the inhabitants are seafaring and migratory persons, it would be contrary to all probability, and a very forced inference, to presume that the assessors know all the inhabitants, or their liability to be taxed.   But if any individual is apprehensive of losing his right, he has an effectual remedy, as already suggested, by giving in his list.   When it is doubtful whether his case is known to the assessors, it is a duty to them, if he intends to hold them responsible, to give them the notice required by law, by giving in his list.

But individuals are not without many securities for the enjoyment of their rights, without the necessity of resorting to an action for damages.   Assessors, like other elective officers, are amenable to their constituents; and if known to be partial or corrupt in their official conduct, they are liable to be, and probably will be, removed.   Besides; like other officers, they take an oath for the upright and faithful performance of their duties, binding upon their consciences; a security for good conduct, which the constitution and laws regard as of great value.   Further; an individual, who thus suffers by the loss of his vote, suffers in common with others, with the public, who have all a deep interest in the purity and regularity of elections; and he suffers also from a breach of some public duty on the part of public officers.   Suppose the selectmen of a town fail to issue a warrant for a town meeting, or the constable to serve it; or suppose the selectmen and town clerk fail to record the votes given, or to certify and return them, by means of which every voter loses his vote.   Is each voter to have an action for damages against those officers?   We think not.   If the breach of duty is wilful, they will be respectively liable to a public prosecution, and to specific penalties when such are provided; but if none, then by indictment.

The rule adopted in this case, we think, derives confirmation from a similar rule in an analogous case, by which assessors, in assessing a tax upon any individual, shall be liable only in case of want of fidelity or integrity. *Baker* v. *Allen,* 21 Pick. 382. It is true that this case is founded on Rev. Sts. *c.* 7, § 44, following and slightly modifying the former *St.* of 1823, *c.* 138, § 5. But a consideration of the circumstances will show that the effect of the statute was to apply a general rule to a case which had been regarded as an exception. The law stood thus : The collector received from the assessors a warrant or command to collect the tax, and if it was not paid, then, by law, he was to take the property or arrest the person of the tax payer. But assessors were regarded as executive officers, bound to follow the power under which they acted ; otherwise, their acts were not justifiable. By the technical rule, therefore, if they taxed a person not by law liable to taxation, they exceeded their authority, and were not justified by the law. Then, by another technical rule, if an officer took the property of one not liable to be taxed, he took it by order of the assessors ; and as by law they who command an unlawful act to be done, and that unlawful act is the taking of another's property, the persons commanding are trespassers, the assessors were held liable for mere mistakes of information or judgment. The effect of the statute was, to take assessors — who are public officers, bound to act in a great variety of difficult cases, and who must be presumed to act uprightly, until the contrary is shown — out of the operation of these technical rules, and bring them within the more general and benign principle, which exempts persons from liability for damages when they have acted with integrity and good faith. But no such technical rules would ever apply to the case of assessors omitting to tax an individual. No trespass or other wrong is committed against him, by affecting his person or property, and none is indirectly done him, unless the omission is wilful and for some sinister purpose, amounting to a want of integrity or fidelity. *Ingraham* v. *Doggett,* 5 Pick. 451.

A consideration of some weight is, that if this action will lie against assessors, without proving a wilful omission to tax one who is liable, it is not confined to assessors of the town where the claimant resides at the time his right of voting is lost, but it may be brought against the assessors of any town in the Commonwealth, in which the claimant may have resided, and been liable to be taxed, at any time within two years next preceding the time. This would be attended with great practical inconvenience and mischief, in the encouragement of litigation, and in the obstruction of public officers in the just and honest exercise of their public duties ; and these are considerations fit to be taken into view, on the question, whether an action will lie, which is obviously one of first impression, for which there is no provision of statute, and no precedent, and where, therefore, it must depend upon reasons of justice and great public policy.

But the main argument for the plaintiff is founded on the assumed analogy between the case of selectmen refusing the vote of a qualified person, upon his tender and claim to vote, and the case of assessors neglecting to assess a tax on an inhabitant, by which his right to vote may be collaterally and remotely affected. The distinction between the cases seems to us to be quite obvious. Some of the grounds of this distinction have been already pointed out ; and we think there are many others.

The grounds upon which an action on the case for damages was originally sustained, in this Commonwealth, against selectmen, for refusing the vote of a qualified voter, without proving that such refusal was wilful and wrongful, were much doubted ; but the case was put upon grounds of public policy, the importance of the personal right, and the difficulty of vindicating it in any other way. *Kilham* v. *Ward*, 2 Mass. 236. *Lincoln* v. *Hapgood*, 11 Mass. 350. *Blanchard* v. *Stearns*, 5 Met. 298. A different rule, it is believed, prevails in most of the other States.

But even under the rule adopted in case of an action against selectmen, we think an action like the present could not be

sustained. In a case against selectmen, the plaintiff must not only show that he was entitled to vote, but that he personally claimed the right, and thereby brought the matter directly to the notice of the selectmen, and obliged them to act on the subject ; that he seasonably furnished them with the evidence of his title ; that such evidence was *sufficient;* and yet that they refused to place his name on the voting list. 5 Met. *ubi sup.* In the present case, no evidence appears that the plaintiff made any application to the assessors, or gave them notice of his desire or of his liability to be taxed. Of course, he furnished them with no evidence upon that sub-ject ; and *non constat* that he was not exempted from taxa tion, as a person who, in the judgment of the assessors, was unable, by reason of age, infirmity or poverty, to contribute to the public charges. If he was not so exempted, it was for him to prove it, and the assessors' knowledge of it, in order to charge them in an action of tort; the presumption of law being, under the maxim *omnia rite acta,* that public officers, charged with a public duty, perform that duty rightfully, until the contrary appears. Consistently with all the allega-tions and all the evidence in the case, the defendants may have acted in strict conformity to the law and to their duty, in omitting to tax the plaintiff, under their power to judge of his ability to pay a tax ; and in order to show the contrary, and prove their conduct wrongful, it was incumbent on the plain-tiff to show that he was not liable to such exemption, and that they could not have honestly so adjudged. It is no an-swer to this, to say that it would be difficult for the plaintiff to prove that they did not so judge ; because the presumption is, that they did so ; a presumption of which they are legally entitled to the benefit, and it must avail them, unless con-trolled by proof. But though sometimes difficult, such proof may be made in various ways, some of which have been indicated ; such as admissions or declarations of the defend-ants, or a state of facts, so plainly and notoriously indicating the plaintiff's ability to pay, that the defendants, acting in good faith, could not have adjudged him unable by reason of

poverty. The difficulty of proof, however, does not exempt the party from giving it, and enable him to recover without proof, where, by the rules of law, it is essential to his case.

It appears to us, therefore, that if we were to adopt the rule applicable to the case of selectmen, and one in all respects analogous and binding, this action, on the case disclosed in the bill of exceptions, could not be maintained. But as we consider this a new case, and one of great importance, we have thought it right to distinguish it from the cases decided in respect to the liability of selectmen, and place the decision upon the broader ground of principle.

With these views of the law, it seems hardly necessary to consider the particulars, in the bill of exceptions, *seriatim* and in detail. Most of them have been considered in the foregoing statement ; and it is manifest that if this view of the law is correct, several of the decisions of the court below cannot be sustained. Some of the more obvious are these : That the defendants were liable to the present plaintiff, although they did not know that he was liable to taxation, if they did not make suitable inquiries as to the facts, or did not use due diligence to ascertain them ; that it was their duty to use due diligence in making inquiries for persons and polls ; that although assessors had a discretionary power to exempt persons who, by reason of age, infirmity or poverty, were unable, &c. yet the burden of proof was upon the defendants, to show that they had honestly and faithfully exercised their judgment in excluding the plaintiff ; and that, in point of fact, they had not proved that inability.

It is proper here to add, to prevent any misapprehension of our opinion, that we do not mean to say that the judge was wrong in declaring that it was the duty of the assessors, in the exercise of their office, to use due diligence in discovering property and persons liable to taxation. It was, no doubt, their duty to their constituents and to the public, but not a duty in which the plaintiff had an interest, and for the non-performance of which he could maintain an action and recover damages. *New trial ordered.*