## KENNEDY *vs.* RAY.

The legislature has the power to specify the duties of librarians of school districts, and for a violation of those duties may give an action, and fix the penalty which shall be recovered by the party aggrieved. The inhabitants of a school district may also make such regulations as they think proper, for the government of the librarian; and he is subject to the direction of the trustees, in all matters relating to the preservation of the books.

But in the absence of any regulations or directions touching the rights of the inhabitants, and the duties of the librarian, an action will not lie by a resident of a school district, against the librarian, for refusing to him or his children access to the library, and permission to take books therefrom.

MOTION by the defendant for a new trial, upon exceptions. The substance of the complaint was, that the plaintiff was a house holder and resident in a school district in the town of Cheektawaga, in Erie county; that the school district owned and possessed a large school district library; that by the regulations made, each and every of the inhabitants of the district was entitled to free access to the library, and to take and carry away and read—subject to certain regulations, as to the number of books to be taken at one time, and the length of time the books might be kept—any book or books such person might desire. That in 1849 the defendant was elected librarian and took possession of the library, and has been ever since such librarian. That the plaintiff, at different times, applied to the defendant for books out of the library, and demanded permission to take books, &c. In short, that the defendant refused to let the plaintiff or the plaintiff's minor children take any book or

books from the library.    She claimed judgment for $5000 dam
ages.    The defendant denied the complaint, and answered new
matter, not material to be stated.

On the trial the plaintiff proved that she was a resident of dis-
trict number four, and paid school district taxes; that the dis-
trict had a school district library consisting of about 300
volumes; that the defendant was librarian, and had the care,
custody and possession of the library, and kept it at his dwell-
ing house.    She proved the allegations made in the complaint,
of application made by her son, a minor, under her direction,
and also by herself, for books, and that the defendant refused to
allow her son and the plaintiff to take any book or books from
the library, and prohibited their coming upon his premises.
There was no proof of any regulations made by the trustees or
superintendent or librarian, touching the library.    The judge,
at the circuit, nonsuited the plaintiff, and the plaintiff excepted.
This motion was to set aside the nonsuit, and for a new trial.

*Geo. B. Benedict,* for the plaintiff.

*F. J. Fithian,* for the defendant.

*By the Court,* MARVIN, J.    It will be proper to ascertain
the position and duties of the librarian, touching the school
district library.    By statute, the taxable inhabitants of a school
district have power, at the district meeting, to raise money by tax
for the purchase of a school district library, not exceeding a cer-
tain amount each year.    The clerk of the district, or such other
person as the taxable inhabitants, at their annual meeting, may
designate and appoint by a majority of votes, shall be the libra-
rian of the district, and shall have the care and custody of the
library, *under such regulations as the inhabitants may adopt
for his government.*    The trustees of the district are the trus-
tees of the library, and the property of all the books, &c. is
deemed to be vested in the trustees.    The librarian is made
subject to the direction of the trustees, in all matters relating to
the preservation of the books and appurtenances of the library,

and he may be removed by the trustees from office for willful disobedience of such directions, or for any willful neglect of duty.

The statute authorizes the state superintendent to frame a set of general regulations relating to school district libraries, and the use of them by the inhabitants of the district, which regulations, it is declared, shall be obligatory upon all persons and officers having charge of the libraries, or using and possessing any of the books from the libraries. An appeal is given to the superintendent by any person aggrieved by any acts or decisions of the trustees concerning district libraries, or the books therein, or the use of books, or from any acts or decisions of the librarian or of any district meeting. (1 *R. S. 4th ed.* 906, 7, 8, §§ 167, 168, 171, 173, 174, 175.)

The librarian is designated and appointed by the district, and he has the care and custody of the library, under such regulations as the inhabitants may adopt for his government. He is made subject to the direction of the trustees, in all matters relating to the preservation of the books. It does not appear in the present case that the inhabitants of the district had ever made any regulations for the government of the librarian, or that the trustees had ever given any directions relating to the preservation of the books; nor does it appear that the superintendent has ever framed a set of general regulations touching librarians. The case is to be considered, then, in its absence of any regulations or directions touching the rights of the plaintiff, and the duties of the defendant. By the statute it is seen that the property of the books is deemed to be vested in the trustees; and they are declared to be the trustees of the library. What relations existed between the plaintiff and defendant? What title and right had the plaintiff to the books in the library? What duty did the defendant owe her? The library was procured for the use of the inhabitants of the district. But to be used, how and where, and under what circumstances? The title of the books was not in the inhabitants of the district, but in the trustees. It seems to me that the rights of the plaintiff, whatever they were, were too imperfect to support an action by her against the librarian. He owed no duty to her, in his of-

ficial character, the breach of which would subject him to an action. He was subject to the directions of the trustees, in all matters relating to the preservation of the books. If the plaintiff felt aggrieved she should have applied to the trustees, and they could probably have afforded the proper relief.

In *Spear* v. *Cummings*, (23 *Pick*. 224,) it was held that the teacher of a town school is not liable to an action, by a parent, for refusing to instruct his children. The court say that the proper remedy of the plaintiff was to appeal to the committee, (answering to our trustees,) and they had power to control the teacher; and finally, if there should be found, practically, any danger of an encroachment upon private rights, in a matter in which the whole community have so deep an interest, it is for the legislature to provide more ample and specific security against such danger. So in a case like the present, further legislation may be necessary, or perhaps the inhabitants of the district have power, by suitable regulations, to remove any danger, and to afford proper means of redress ; or the superintendents may frame general regulations which may be sufficient to afford redress. The difficulty is that the plaintiff shows no legal rights in and to the books, and hence no legal actionable wrong was done to her. There may be many moral wrongs for which the law affords no remedy. And there may be legal wrongs in which the damages to individuals may be very great, and yet so remote, contingent or indefinite, as to furnish no good ground of action. These questions are ably considered in *Lamb* v. *Stone*, (11 *Pick*. 527,) and in *Spear* v. *Cummings*, (*supra*.)

What damage has the plaintiff sustained by herself and children being deprived of the reading of the books? One might give a large sum for the use of a book to read. It is mental food, often more valuable and more highly prized than the most tempting viands for the palate. But, if one is deprived of this mental food, what is to be the measure of damages ? How are they to be estimated? What rule can be laid down as a guide to the jury ? The reading of some books is positively injurious. Some read a book for the pleasure it affords at the time, not expecting a lasting benefit. Some children and young per-

Kennedy *v.* Ray.

sons derive a great benefit from reading books, and others very little. In short, it is impossible to lay down any rule touching the damages which the plaintiff sustained by being deprived of the use of the books in her family. Every thing relating to the damages is contingent, remote and uncertain, and from the very nature of the subject, purely speculative. Such cases may be very proper for legislation. The legislature can clearly specify the duties of the librarian, and for a violation of those duties may give an action, and fix the *penalty* which shall be recovered for the breach of the law. This kind of legislation is not uncommon. The penalty for the violation of the duty imposed by law being fixed, there is no embarrassment arising as to the amount that shall be recovered. The legislature may give the action exclusively to the party aggrieved.

*Ashley* v. *White et al.* (*Lord Raym. R.* 938) is a leading case, and usually referred to in support of a maxim, that when a right exists and has been violated, the law gives a remedy by action for damages. In that case, it was held that a man who had a right to vote at an election for member of parliament, may maintain an action against the returning officer for refusing to admit his vote. In *Lincoln* v. *Hapgood and others,* (11 *Mass. R.* 350,) it was held that an action would lie against selectmen for refusing to receive the vote of a qualified elector.

It would seem to be impossible, in such cases, to lay down any rule of damages. I have referred to these cases for this reason, and for the purpose of showing particularly the reasons upon which the Massachusetts court proceeded. They are stated in the case referred to, and when the decision was pressed upon the court, in the case against the school teacher, (*supra,*) the court, referring to these cases say, "the principle upon which those cases were decided was, that this is a great personal, political and constitutional privilege, in danger of being frequently and wantonly violated by those in the exercise of power, and that it would be difficult in most cases to prove actual malice, and, *ex-necessitate,* the law allows such action upon considerations of great public policy, to prevent greater mischief. This principle is not applied to the case under consideration, and

cannot be relied upon as a precedent." Much less are those cases authority for sustaining the action in the present case. The nonsuit was proper, and the motion for a new trial should be denied.

[ERIE GENERAL TERM, September 8, 1856. *Bowen, Mullett, Greene* and *Marvin,* Justices.]